OPINION OF THE COURT
Saxe, J.
These companion appeals raise issues regarding the enforcement of perpetual care obligations when cemeteries fall into disrepair. The cemetery in question, the Bayside Cemetery, located on Pitkin Avenue in Ozone Park, Queens, is owned and operated by defendant Congregation Shaare Zedek, a religious corporation.[1] Both actions are putative class actions in which their class status is not currently at issue.
The named plaintiffs in the Lucker action are five individuals whose relatives are buried in Bayside Cemetery. John Lucker, Elizabeth Lucker and Nancy L. Rousseau allege that their grandparents’ graves at Bayside Cemetery are inaccessible due to overgrowth, despite their grandparents’ purchase, in or about 1973, of a perpetual care agreement from defendants through a religious society of which they were members, the Chebra She-bath Achim Society. Lynn Cohen, who asserts that she served as the executor of her mother’s estate, similarly alleges that her parents’ graves at Bayside Cemetery have not been cared for although her “family member(s), including her parents, entered into one or more perpetual care contracts] ” with defendants. Fran Goldstein alleges that her parents are buried in perpetual care plots at Bayside Cemetery, and that her “family member(s)/ relative(s) entered into one or more perpetual care contract(s) with a Defendant.” These five individual plaintiffs purport to sue on behalf of the class consisting of family members and near relatives of individuals who purchased perpetual care from defendants.
The element of the Leventhal action that distinguishes it from the Lucker action is that named plaintiff Steven R. Leventhal was himself the purchaser of the perpetual care arrangement.
*167 Specifically, Leventhal alleges that in 1985 he paid defendant Congregation Shaare Zedek $1,200 for the perpetual care of three graves at Bayside Cemetery. The document that Leventhal was given in return for this payment, called a trust fund receipt, identified the $1,200 as the “Fund,” and identified the following uses and purposes of the “Fund”:
“Pursuant to Section 92 of the Membership Corporation [L]aw of New York, said sum shall be held as part of the Special Fund of the ‘CONGREGATION’, maintained by it for the perpetual care of lots, plots or graves in Bayside Cemetery, and deposited by the ‘CONGREGATION’ in its name in any State or Federal Savings Bank or Association paying interest thereon, or invested or re-invested by it for the purchase in its name of any Federal, State, Municipal or other Government certificates or bonds, or of other securities authorized by law for investment of Trust Funds.
“The interest or income realized from the ‘FUND’ shall be used toward the perpetual care and upkeep of the following lots, plots or graves:
“1. Ethel Leventhal
“Benjamin Stoloff
“Emma Stoloff
“located in said Bayside Cemetery, limited, however to the extent for which such interest or income derived therefrom will permit and pay, as provided for in Section 91 of the aforesaid Membership Corporation [L]aw, and without applying any part of the principal ‘FUND’ for that purpose. PROVIDED, however, that the ‘CONGREGATION’ will not allow, pay or apply in any year or be in any way responsible for a higher rate of interest on the principal sum of the aforesaid ‘FUND’ than the average rate of interest it may receive in such year from its total perpetual care funds.
“The ‘CONGREGATION’ shall not be held responsible for any loss, depletion or depreciation of the principal of said ‘FUND’, or the value of any investment made therewith after it makes such deposit or investment.”
*168 Leventhal sues on behalf of “all persons or entities . . . who purchased a perpetual care or annual care contract from a Defendant or their agents or assigns.”
The deceased relatives of the Lucker plaintiffs were given the same form of trust fund receipt when they purchased their perpetual care arrangements for their graves in the Bayside Cemetery, providing that the purchaser’s payment would be held as part of a special fund, to be invested by the Congregation, with the interest to pay for the care and upkeep of the specified graves.
The complaints in both actions allege that defendants failed to abide by the obligations created by those trust fund receipts, and assert claims for breaches of contract and fiduciary duty, violation of General Business Law §§ 349 and 350, conversion, and unjust enrichment; they seek money damages, an accounting of the perpetual care trusts’ funds, injunctive relief and imposition of a constructive trust.
Defendants moved to dismiss the Lucker complaint for lack of standing under the General Business Law and under common law, on the ground that plaintiffs were not parties to the perpetual care arrangements, but merely relatives of deceased family members who allegedly purchased such care. Defendants argued that if such claims were permitted, they could be brought by hundreds, if not thousands, of family members of deceased relatives buried in the cemetery who entered into perpetual care arrangements. Defendants asserted that the law limits the right to enforce such charitable trusts to the New York State Attorney General.
The motion court granted defendants’ motion and dismissed the Lucker complaint in its entirety (33 Misc 3d 1203[A], 2011 NY Slip Op 51771[U] [2011]), and plaintiffs appeal.
In the Leventhal action, the motion court granted so much of defendants’ motion as sought to dismiss the conversion and General Business Law §§ 349 and 350 claims, and denied so much of the motion as sought dismissal of plaintiff’s claims sounding in breach of contract and breach of fiduciary duty (2012 NY Slip Op 33530[U] [2012]). Plaintiff appeals from the part of the order that granted the motion and defendants cross-appeal to the extent the motion was denied.
For purposes of these CPLR 3211 motions we must accept as true the factual allegations of the complaints and all inferences favorable to plaintiffs that reasonably flow from them (see Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]). We therefore as *169 sume that, as stated in the 2004 newspaper article quoted by the Lucker complaint (Julie Wiener, Weeding Out an Eyesore, The Jewish Week, June 6, 2003), “much of the cemetery remains mired in overgrowth, and large swaths continue to look like a rainforest, where fallen headstones are buried under vines, weeds, wildflowers and fallen trees.” The question before us is whether, even accepting these facts, plaintiffs are legally entitled to bring these actions.
The general requirements for establishing standing are that the party must show injury in fact, that is, an actual stake in the matter to be adjudicated, so as to ensure that the party has some concrete interest in prosecuting the action, and the court must have before it a justiciable controversy (see Schlesinger v Reservists Comm. to Stop the War, 418 US 208, 220-221 [1974]). But, the requirements for establishing standing to enforce a charitable trust are more exacting (see Alco Gravure, Inc. v Knapp Found., 64 NY2d 458, 465 [1985]).
EPTL article 8, which governs charitable trusts, specifically includes trusts for the perpetual care of graves: “Dispositions of property in trust for the purpose of the perpetual care ... of cemeteries or private burial lots in cemeteries . . . shall be deemed to be for charitable and benevolent purposes” (EPTL 8-1.5). The statute directs the State Attorney General to protect and enforce the interests and rights of the beneficiaries: “The attorney general shall represent the beneficiaries of such dispositions for religious, charitable, educational or benevolent purposes and it shall be his duty to enforce the rights of such beneficiaries by appropriate proceedings in the courts” (EPTL 8-1.1 [f] [emphasis added]). “The obvious purpose of this provision was to provide a mechanism for enforcement of trusts whose beneficiaries were unascertainable” (Lefkowitz v Lebensfeld, 51 NY2d 442, 446 [1980]).
Plaintiffs in the Lucker action, as family members of deceased individuals buried in Bayside Cemetery who allegedly purchased perpetual care arrangements before their deaths, protest that the Attorney General failed to take appropriate action to enforce their relatives’ perpetual care contracts, leaving them no choice but to seek enforcement themselves.
Both sides rely on the ruling in Alco Gravure (64 NY2d 458) in support of their positions with regard to plaintiffs’ standing. The Court in that case explained:
“The general rule is that one who is merely a pos *170 sible beneficiary of a charitable trust, or a member of a class of possible beneficiaries, is not entitled to sue for enforcement of the trust. Instead, the Attorney-General has the statutory power and duty to represent the beneficiaries of any disposition for charitable purposes” (64 NY2d at 465 [citations omitted]).
Put another way, “Normally, standing to challenge actions by the trustees of a charitable trust or corporation is limited to the Attorney-General” {id. at 466). The public policy underlying this standing requirement is to presérve the assets of charitable trusts and “to prevent vexatious litigation and suits by irresponsible parties who do not have a tangible stake in the matter and have not conducted appropriate investigations” {id.).
“There is an exception to the general rule, however, when a particular group of people has a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number” (id. at 465).
In Aleo Gravure, the plaintiffs established that they constituted such a sharply defined and limited class of beneficiaries with a special interest in the funds; namely, they were the employees of the specified corporations (or the successors to those corporations) who were the intended beneficiaries of the funds placed with the defendant foundation. Plaintiffs contend that they, like the plaintiffs in Alco Gravure, fall within a sharply defined and limited class of beneficiaries; defendants argue that they do not.
We hold that the Lucker plaintiffs and their class as they define it — indeed, whatever group categorization is used — are neither sufficiently “sharply defined” nor sufficiently “limited in number” to be eligible for standing to sue the cemetery as beneficiaries. To the contrary, aside from the use of the vague term “near relatives,” plaintiffs can offer no rational limiting principle that would distinguish children from grandchildren— or, indeed, great-grandchildren — or from nieces or nephews or cousins and their children. Over the years, each of the individuals buried in the cemetery who entered into a perpetual care arrangement potentially could have 5, 10, 20 or more relatives desirous of suing the cemetery for a failure of perpetual care. Even accepting the premise that each of those individuals could be said to have a “special interest” in the upkeep of his or her *171 relative’s grave, the number of potential plaintiffs is far too great to permit their class to be characterized as sharply defined or limited in number. Notably, the Court in Alco Gravure relied on the fact that “the present action concerns not the ongoing administration of a charitable corporation, but the dissolution of that corporation and the complete elimination of the individual plaintiffs’ status as preferred beneficiaries of the funds originally donated by Joseph Knapp” (64 NY2d at 466). That is, the class of claimants was limited to the presently-existing employees of the named corporations.
In contrast, here, allowing relatives to bring lawsuits as to each lot, plot or grave could create endless litigation, substantially depleting the trust assets. Enforcement of the subject charitable trusts is therefore best left to the Attorney General, so as not to expose the trust funds to money-draining multiple lawsuits, and to avoid setting a precedent of allowing a broad, vague beneficiary base to commence multiple actions against a charitable trust.
To further support their claim that New York law recognizes the right of family members to enforce an abused trust, plaintiffs cite Smithers v St. Luke’s-Roosevelt Hosp. Ctr. (281 AD2d 127 [1st Dept 2001]). However, Smithers did not involve either beneficiary standing or standing as a family member. Although the plaintiff was the wife of the donor, she was permitted standing as the administrator of the estate of the donor of a charitable donation that had been made subject to explicit restrictions. In reversing the motion court’s dismissal for lack of standing, this Court explained that
“Mrs. Smithers did not bring this action on her own behalf or on behalf of beneficiaries of the Smithers Center. She brought it as the court-appointed special administratrix of the estate of her late husband to enforce his rights under his agreement with the Hospital through specific performance of that agreement. Therefore, the general rule barring beneficiaries from suing charitable corporations has no application to Mrs. Smithers” (id. at 138).
The Lucker plaintiffs fall into the opposite category from Mrs. Smithers. They are relatives, acting as relatives. Moreover, there were no retained rights in the creation of the trusts, such as the donor retained in Smithers. The general rule barring beneficiaries from suing charitable corporations, inapplicable in Smithers, is entirely on point here.
*172 The Lucker plaintiffs may not “stand in the shoes” of their deceased relatives to bring direct claims for injury to those relatives. Such claims would amount to an impermissible extension of the legislative scheme for the survival of actions. A decedent’s personal representative has the authority to bring causes of action that were viable at the time of the decedent’s death, not claims that arose after his or her death (EPTL 11-3.1; Matter of Gandolfo, 237 AD2d 115 [1st Dept 1997]). The causes of action here arose after those decedents’ deaths. John Lucker’s belated application for, and receipt of, appointment in Connecticut to serve as the legal representative of the estate of his grandmother, Ruth Lucker, is therefore unavailing. Nor is there any other legal construct by which an individual may sue by standing in the shoes of a deceased individual.
We conclude that the Lucker plaintiffs’ allegations do not, and cannot, sufficiently state that they are a sharply defined group of beneficiaries that holds a special interest in the perpetual care trusts. None of the individual plaintiffs allege that they are donors who established the charitable trusts or that the trusts specifically identify them as individuals intended to be benefit-ted by the trusts. None of them is an executor or administrator of an estate whose deceased possessed a viable claim against defendants at the time of his or her death.
As indicated, unlike the plaintiffs in Lucker, Leventhal himself entered into an agreement for perpetual care of his deceased relatives’ graves. We must now address the question whether, and to what extent, this gives him enforceable rights against the cemetery.
In an ordinary contract law context, a party who entered into an agreement would unquestionably have the legal authority to bring a legal action for its enforcement. However, the arrangement Leventhal made with defendant by virtue of his payment of $1,200 is not in the nature of a standard commercial contract for a product or services, under which he would be entitled to the item or service he purchased or the return of his purchase price, or other contract damages. Rather, by his payment, Leventhal became a donor of a charitable trust fund created and administered pursuant to Not-For-Profit Corporation Law § 1507 and EPTL 8-1.5.
As defendants point out, “Normally, standing to challenge actions by the trustees of a charitable trust or corporation is limited to the Attorney-General” (Alco Gravure, Inc. v Knapp Found., 64 NY2d at 466). However, there are circumstances in *173 which a donor of a charitable trust has been held to be entitled to sue for enforcement of the terms of a charitable donation. The parameters of a donor’s entitlement to sue a charitable trust were discussed at length in Smithers v St. Luke’s-Roosevelt Hosp. Ctr. (281 AD2d at 127).
As the Smithers decision points out, Associate Alumni of Gen. Theol. Seminary of Prot. Episcopal Church in U.S. of Am. v General Theol. Seminary of Prot. Episcopal Church in U.S. (163 NY 417 [1900]) established that the Attorney General’s standing to challenge claimed abuses of trust funds is not necessarily exclusive. In Associate Alumni, it was held that a donor of a charitable trust, namely, an alumni group that donated a fund to a seminary to be used for the endowment of a professorship, had standing to maintain an action to enforce the terms of the trust; the Court recognized that “ [i]f the trustees of a charity abuse the trust, misemploy the charity fund, or commit a breach of the trust, . . . the redress is by bill or information by the attorney-general or other person having the right to sue” (id. at 422 [internal quotation marks omitted and emphasis added]). The alumni group was such an “other person.”
Moreover, as the Smithers decision observes, the right of the plaintiff group in Associate Alumni to bring its action was not dependent on the right it had retained in the trust instrument to nominate candidates for the professorship; rather, its entitlement to sue was derived from its status as the donor of the charitable trust (see 281 AD2d at 137). This conclusion was supported by the fact that, among the cases relied on by Associate Alumni to support the right of “other person[s]” to sue for a breach of a trust, was the case of Mills v Davison (54 NJ Eq 659, 35 A 1072 [1896]), in which the donor had not retained any rights, but was simply “the founder of the charity, [who had] standing to appear in court to restrain the diversion of the property donated from the charitable uses for which it was given” (54 NJ Eq at 667, 35 A at 1075).
While the alleged breach of the terms of the trust in Associate Alumni did not entitle the plaintiff to seek the return of the funds, the plaintiff “had sufficient standing to maintain an action to enforce the trust” (163 NY at 422). Similarly, here, while Leventhal is not entitled to the return of his payment as damages for the alleged breach of the trust terms, as the donor of the trust fund, he has sufficient standing to sue to enforce the trust, that is, to obtain an order requiring the trustee to satisfy its obligations.
*174 However, while Leventhal has standing to sue for enforcement of the terms of the trust, the remainder of his claims must be dismissed.[2]
The complaint fails to state a cause of action for conversion. “[A]n action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question” (Amity Loans v Sterling Natl. Bank & Trust Co. of N.Y., 177 AD2d 277, 279 [1st Dept 1991]). The plaintiff must have a superior right of possession to the funds, and the defendant must have exercised unauthorized dominion over the funds to the exclusion of the plaintiffs rights (see generally Bankers Trust Co. v Cerrato, Sweeney, Cohn, Stahl & Vaccaro, 187 AD2d 384 [1st Dept 1992]). The allegation in the Leventhal complaint, together with all reasonable inferences, fails to make out such a claim. There is no factual allegation that supports a finding that Leventhal retained any right of revocation or reversionary interest in the funds he paid to defendants for perpetual care of his deceased family members’ graves. Rather, legal title to the trust funds vested entirely and irrevocably in Congregation Shaare Zedek at the time of payment (see EPTL 7-2.1). “[W]hen a valid charitable trust is created, without provision for a reversion, the interest of the donor is permanently excluded” (Stewart v Franchetti, 167 App Div 541, 547 [1st Dept 1915]).
The complaint also fails to state causes of action under General Business Law §§ 349 and 350.
“To establish [a] prima facie violation of General Business Law § 349, a plaintiff must demonstrate that the defendant is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, and that the plaintiff has been injured because of it. Deceptive acts or practices may be defined as representations or omissions ‘likely to mislead a reasonable consumer acting reasonably under the circumstances.’ A similar showing is required under General Business Law § 350, which prohibits false advertising” (St. Patrick’s Home for Aged & Infirm v Laticrete Intl., 264 AD2d 652, 655 [1st Dept 1999] [citations omitted]).
Leventhal does not allege any misrepresentations or deception *175 beyond the statement that perpetual care would be provided. Mere allegations that a party entered into a contract lacking the intent to perform are insufficient to establish a claim of misrepresentation or fraud (see New York Univ. v Continental Ins. Co., 87 NY2d 308, 318 [1995]). The conduct of which Leventhal complains is essentially that defendants failed to satisfy their contractual duties, not that they concealed or misrepresented contractual terms.
Even assuming that the factual allegations were sufficient to allege violations of General Business Law §§ 349 and 350, the claims would be time-barred under the three-year statute of limitations (see CPLR 214 [2]; Corsello v Verizon N.Y., Inc., 18 NY3d 777, 789 [2012]). The accrual date for such a claim is the date of the injury (see Corsello, 18 NY3d at 790). Whether the date of injury is the date Leventhal entered into the perpetual care arrangement in 1985, or some time between that date and the date that reports of the cemetery’s disrepair began to be publicized in 2004, Leventhal’s commencement of this action in January 2011 is time-barred.
We reject Leventhal’s contention that the statute of limitations was tolled. The continuing violation theory is inapplicable, since it pertains to a situation where the injurious condition is intermittent, giving rise to recurring injuries {see 1050 Tenants Corp. v Lapidus, 289 AD2d 145, 146 [1st Dept 2001]). Equitable estoppel is also inapplicable, since Leventhal provides no basis for a claim that he relied on later acts of deception or concealment to justify estopping defendants from relying upon the statute of limitations {see Corsello, 18 NY3d at 789). Leventhal fails to explain how defendants’ actions kept him from bringing a timely lawsuit {see Zumpano v Quinn, 6 NY3d 666, 674 [2006]).
We modify only to dismiss Leventhal’s breach of fiduciary duty claim, which the motion court allowed to proceed. While defendants owe a fiduciary duty, the duty is owed only to trust beneficiaries, not to the trust’s donor (see Matter of Heller, 6 NY3d 649, 655 [2006]); in the case of a charitable trust, the beneficiaries are the people of the state, as represented by the Attorney General. The beneficial interest Leventhal identifies is merely the same interest in being able to visit and have access to the graves of his deceased family members as that of every relative of a deceased individual. We have already concluded that relatives, who admittedly have an interest in the upkeep of their family members’ graves, nevertheless are not entitled to sue to enforce the cemetery’s upkeep responsibilities; if rela *176 tives had a beneficial interest that allowed them to sue for enforcement of the terms of the perpetual care trusts, then they would all be entitled to sue for breach of fiduciary duty. Since Leventhal has no greater beneficial interest than that of any other relative, he can have no greater entitlement to make a claim for breach of fiduciary duty than any of those relatives. Notably, the duties owed to a donor of a trust, as identified in Smithers v St. Luke’s-Roosevelt Hosp. Ctr. (281 AD2d 127 [2001]) and the cases it discusses, do not encompass a fiduciary duty.
Accordingly, the order of the Supreme Court, New York County (Debra A. James, J.), entered on or about October 6, 2011, which granted defendants Bayside Cemetery and Congregation Shaare Zedek’s motion to dismiss the Lucker complaint should be affirmed, without costs. The order of the Supreme Court, New York County (Debra A. James, J.), entered on or about January 12, 2012, which, to the extent appealed from as limited by the briefs, granted so much of defendants Bayside Cemetery and Congregation Shaare Zedek’s motion as sought to dismiss the conversion and General Business Law §§ 349 and 350 causes of action in the Leventhal complaint, and denied so much of the motion as sought to dismiss the breach of contract and breach of fiduciary duty causes of action, should be modified, on the law, to grant the motion as to the claim for breach of fiduciary duty, and otherwise affirmed, without costs.
Sweeny, J.E, Moskowitz, Gische and Clark, JJ., concur.
Order, Supreme Court, New York County, entered on or about October 6, 2011, affirmed, without costs, and order, same court and Justice, entered on or about January 12, 2012, modified, on the law, to grant the motion as to the claim for breach of fiduciary duty, and otherwise affirmed, without costs.

. The third named defendant, Community Association for Jewish At-Risk Cemeteries, a not-for-profit corporation which allegedly holds itself out as the steward of the cemetery, is no longer a party to this action, since its separate dismissal motion was granted, and no appeal has been taken from that order.

. Leventhal does not challenge on appeal the dismissal of his claims for unjust enrichment and aiding and abetting a breach of fiduciary duty.