[849 NE2d 262, 816 NYS2d 403]

In the Matter of JACOB HELLER, Deceased. SANDRA DAVIS, as Attorney-in-Fact for BERTHA M. HELLER, Appellant; HERBERT M. MILLER et al., Respondents.

Argued March 22, 2006; decided May 4, 2006

650

**POINTS OF COUNSEL**

*Greenfield Stein & Senior, LLP,* New York City (*Gary B. Freidman* and *Jeffery H. Sheetz* of counsel), for appellant. I. The rule against fiduciary self-dealing is one of the most deeply ingrained principles of our common law; the Appellate Division's construction of the Legislature's silence on this issue as approval of such conduct is unsupported by the legislative history, contrary to established canons of statutory construction, and undermines the rule against undivided loyalty to which this Court has adhered for over 100 years. (*Meinhard v Salmon,* 249 NY 458; *Wendt v Fischer,* 243 NY 439; *Munson v Syracuse, Geneva & Corning R.R. Co.,* 103 NY 58; *Dutton v Willner,* 52 NY 312; *City Bank Farmers Trust Co. v Cannon,* 291 NY 125; *Matter of Durston,* 297 NY 64; *Birnbaum v Birnbaum,* 73 NY2d 461; *Matter of Ryan,* 291 NY 376; *Transit Commn. v Long Is. R.R. Co.,* 253 NY 345; *Fitzgerald v Quann,* 109 NY 441.) II. The Surrogate's Court properly determined that the trustees could not elect unitrust retroactive to January 1, 2002.

*Thacher Proffitt & Wood LLP,* White Plains (*Kevin J. Plunkett, Darius P. Chafizadeh* and *Stefanie A. Bashar* of counsel),

and *Greenberg Traurig, LLP,* New York City (*Linda B. Hirschson* of counsel), for respondents. I. The unitrust election is proper. (*Andre v Pomeroy,* 35 NY2d 361; *Menzel v Plotnick,* 202 AD2d 558; *Nicklas v Tedlen Realty Corp.,* 305 AD2d 385; *Strychalski v Mekus,* 54 AD2d 1068; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Way v Grantling,* 289 AD2d 790; *People v White,* 73 NY2d 468; *Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669; *Riley v County of Broome,* 95 NY2d 455; *Matter of Sutka v Conners,* 73 NY2d 395.) II. The trustees correctly elected into the unitrust regime effective January 1, 2002. (*Matter of 1605 Book Ctr. v Tax Appeals Trib. of State of N.Y.,* 83 NY2d 240; *Matter of Elgut v County of Suffolk,* 1 AD3d 512; *Matter of Theroux v Reilly,* 1 NY3d 232; *Castro v United Container Mach. Group,* 96 NY2d 398; *People v Giordano,* 87 NY2d 441; *Sanders v Winship,* 57 NY2d 391; *Matter of Branford House v Michetti,* 81 NY2d 681; *Matter of Washington Post Co. v New York State Ins. Dept.,* 61 NY2d 557.)

**OPINION OF THE COURT**

ROSENBLATT, J.

In September 2001, New York enacted legislation that transformed the definition and treatment of trust accounting income. The Uniform Principal and Income Act (EPTL art 11-A) and related statutes (L 2001, ch 243), including the optional unitrust provision (EPTL 11-2.4), are designed to facilitate investment for total return on a portfolio. The appeal before us centers on the optional unitrust provision, which permits trustees to elect a regime in which income is calculated according to a fixed formula and based on the net fair market value of the trust assets. We hold that a trustee's status as a remainder beneficiary does not in itself invalidate a unitrust election made by that trustee, and that a trustee may elect unitrust status retroactively to January 1, 2002, the effective date of EPTL 11-2.4.

I.

In his will, after making certain other gifts of personal property and money, Jacob Heller created a trust to benefit his wife Bertha Heller (should she survive him) and his children. Heller provided that his entire residuary estate be held in trust during Bertha's life. He appointed his brother Frank Heller as trustee and designated his sons Herbert and Alan Heller as trustees on Frank's death. Every year Bertha was to receive the greater of $40,000 or the total income of the trust. Heller named his

daughters (Suzanne Heller and Faith Willinger, each with a 30% share) and his sons and prospective trustees (Herbert and Alan Heller, each with a 20% share) as remainder beneficiaries.

Jacob Heller died in 1986, and his wife Bertha survives him. When Heller's brother Frank died in 1997, Herbert and Alan Heller became trustees. From that year until 2001, Bertha Heller received an average annual income from the trust of approximately $190,000. In March 2003, the trustees elected to have the unitrust provision apply, pursuant to EPTL 11-2.4 (e) (1) (B) (I). As required by EPTL 11-2.4 (e) (1) (B) (III), they notified trust beneficiaries Bertha Heller, Suzanne Heller and Faith Willinger. The trustees sought to have unitrust treatment applied retroactively to January 1, 2002, the effective date of EPTL 11-2.4. As a result of that election, Bertha Heller's annual income was reduced to approximately $70,000.

Appellant Sandra Davis commenced this proceeding, as attorney-in-fact for her mother Bertha Heller, and on August 1, 2003 moved for summary judgment, seeking, among other things, an order annulling the unitrust election and revoking the letters of trusteeship issued to Herbert and Alan Heller. She also sought a determination that the election could not be made retroactive to January 1, 2002. Surrogate's Court granted the branch of her summary judgment motion that sought to void the trustees' retroactive application of the unitrust election, but denied the branches of her motion seeking annulment of the unitrust election itself and other relief.

Davis appealed Surrogate's Court's order, and Herbert and Alan Heller cross-appealed. The Appellate Division affirmed the order to the extent that it denied Davis's summary judgment motion and reversed so much of the order as annulled the retroactive application of the unitrust election. It also granted leave to appeal and certified the following question to us: "Was the opinion and order of [the Appellate Division] dated August 15, 2005, properly made?" We conclude that it was and now affirm.

## II.

The 2001 legislation that forms the subject of this appeal was designed to make it easier for trustees to comply with the

demands of the Prudent Investor Act of 1994.[1] In addition to enacting EPTL article 11-A (Uniform Principal and Income Act), the Legislature both added EPTL 11-2.3 (b) (5) to the Prudent Investor Act and included the optional unitrust provision, EPTL 11-2.4.

Under the former Principal and Income Act (EPTL 11-2.1),[2] a trustee was required to balance the interests of the income beneficiary against those of the remainder beneficiary (see EPTL 11-2.1 [a] [1]), and was constrained in making investments by the act's narrow definitions of income and principal (see EPTL 11-2.1 [b]). A trustee who invested in nonappreciating assets would ensure reasonable income for any income beneficiary, but would sacrifice growth opportunities for the trust funds, as inflation eroded their value; if the trustee invested for growth, remainder beneficiaries would enjoy an increase in the value of the trust at the expense of income beneficiaries.[3] Moreover, the need to invest so as to produce what the former Principal and Income Act defined as income led to investment returns that failed to represent the benefits envisaged as appropriate by settlors.[4]

The Prudent Investor Act encourages investing for total return on a portfolio. Unless the governing instrument expressly provides otherwise, the act requires that trustees "pursue an *overall* investment strategy to enable the trustee to make appropriate present and future distributions to or for the benefit of the beneficiaries under the governing instrument, in accordance with risk and return objectives reasonably suited to the *entire* portfolio" (EPTL 11-2.3 [b] [3] [A] [emphasis added]).

The 2001 legislation allows trustees to pursue this strategy uninhibited by a constrained concept of trust accounting income. First, the Prudent Investor Act now authorizes trustees

"to adjust between principal and income to the

---

1. *See e.g.* Legis Mem in Support of 5th Report of EPTL-SCPA Legis Advisory Comm, 14 Warren's Heaton, Surrogates' Courts, Appendix 5.03, at App 5-171 (6th ed rev).

2. The former Principal and Income Act (EPTL 11-2.1) was superseded by the Uniform Principal and Income Act (EPTL art 11-A) enacted in 2001. The former act does not apply to receipts and expenses received or incurred after January 1, 2002 (EPTL 11-2.1 [m]).

3. *See* Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL art 11-A, 2006 Pocket Part, at 82-83; *see also* 5th Report of EPTL-SCPA Legis Advisory Comm, 14 Warren's Heaton, Surrogates' Courts, Appendix 5.01, at App 5-4—5-13 (6th ed rev).

4. *See* 14 Warren's Heaton, Surrogates' Courts, at App 5-4—5-5.

extent the trustee considers advisable to enable the trustee to make appropriate present and future distributions in accordance with clause (b) (3) (A) if the trustee determines, after applying the rules in article 11-A, that such an adjustment would be fair and reasonable to all of the beneficiaries, so that current beneficiaries may be given such use of the trust property as is consistent with preservation of its value" (EPTL 11-2.3 [b] [5] [A]).

A trustee investing for a portfolio's total return under the Prudent Investor Act may now adjust principal and income to compensate for the effects of the investment decisions on distribution to income beneficiaries (*see* 14 Warren's Heaton, Surrogates' Courts, at App 5-25—5-27). Alternatively, the optional unitrust provision lets trustees elect unitrust status for a trust (EPTL 11-2.4), by which income is calculated according to a fixed formula.

In a unitrust pursuant to EPTL 11-2.4, an income beneficiary receives an annual income distribution of "four percent of the net fair market values of the assets held in the trust on the first business day of the current valuation year" (EPTL 11-2.4 [b] [1]), for the first three years of unitrust treatment. This is true regardless of the actual income earned by the trust. Starting in the fourth year, the value of the trust assets is determined by calculating the average of three figures: the net fair market value on the first business day of the current valuation year and the net fair market values on the first business days of the prior two valuation years (*see* EPTL 11-2.4 [b] [2]). Income generated in excess of this amount is applied to principal.

Under the 2001 legislation, then, a trustee may invest in assets, such as equities, that outperform other types of investment in the long term but produce relatively low dividend yields for an income beneficiary, and still achieve impartial treatment of income and remainder beneficiaries. The trustee may accomplish this either by adjusting as between principal and income (*see* 14 Warren's Heaton, Surrogates' Courts, at App 5-25—5-27) or by electing unitrust status with the result that the income increases in proportion to the value of the principal (*id.* at App 5-14). If a trust's assets are primarily interests in nonappreciating investments producing high yields for income beneficiaries, a unitrust election may initially result in a substantial decrease in the distribution to any income beneficiary, at least until the portfolio is diversified. This case presents such a scenario.

### III.

Davis argues that the trustees are barred as a matter of law from electing unitrust status because they are themselves remainder beneficiaries, and that, in any case, they may not elect unitrust status retroactively to January 1, 2002. The Appellate Division held that the legislation does not impede unitrust election by an interested trustee, that such an election is not inconsistent, per se, with common-law limitations on the conduct of fiduciaries and that the statute permits trustees to select retroactive application. We agree.

 EPTL 11-2.3 (b) (5), the 2001 statute that gives trustees the power to adjust between principal and income, expressly prohibits a trustee from exercising this power if "the trustee is a current beneficiary or a presumptive remainderman of the trust" (EPTL 11-2.3 [b] [5] [C] [vii]) or if "the adjustment would benefit the trustee directly or indirectly" (EPTL 11-2.3 [b] [5] [C] [viii]). Tellingly, the Legislature included no such prohibition in the simultaneously enacted optional unitrust provision, EPTL 11-2.4. Moreover, in giving a list of factors to be considered by the courts in determining whether unitrust treatment should apply to a trust, the Legislature mentioned no absolute prohibitions (see EPTL 11-2.4 [e] [5] [A]), and created a presumption in favor of unitrust application (EPTL 11-2.4 [e] [5] [B]). We conclude that the Legislature did not mean to prohibit trustees who have a beneficial interest from electing unitrust treatment.

It is certainly true that the common law in New York contains an absolute prohibition against self-dealing, in that "a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect" (Birnbaum v Birnbaum, 73 NY2d 461, 466 [1989]. "The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary" (Restatement [Second] of Trusts § 170 [1]). In this case, however, the trustees owe fiduciary obligations not only to the trust's income beneficiary, Bertha Heller, but also to the other remainder beneficiaries, Suzanne Heller and Faith Willinger. That these beneficiaries' interests happen to align with the trustees' does not relieve the trustees of their duties to them. Here, we cannot conclude that the trustees are prohibited from electing unitrust treatment as a matter of common-law principle.

That the trustees are remainder beneficiaries does not, by itself, invalidate a unitrust election. Nevertheless, a unitrust

election from which a trustee benefits will be scrutinized by the courts with special care. In determining whether application of the optional unitrust provision is appropriate, it remains for the Surrogate to review the process and assure the fairness of the trustees' election, by applying relevant factors including those enumerated in EPTL 11-2.4 (e) (5) (A). Application of these factors here presents questions of fact precluding summary judgment.

## IV.

■ Davis seeks to reinstate Surrogate's Court's determination that the unitrust election could not be made retroactive to January 1, 2002. In our view, however, the Legislature structured EPTL 11-2.4 so that it could be applied retroactively. EPTL 11-2.4 (d) (1) provides that a trustee who elects unitrust status may specify the date on which the interest of a beneficiary begins. Thus, the statute vests trustees with authority to determine the effective date of unitrust elections.

Moreover, EPTL 11-2.4 (b) (6) instructs a trustee who elects unitrust treatment to "determine the unitrust amount properly payable for any *preceding* and current valuation year of the trust" (emphasis added), unless the election is "expressly made effective prospectively as permitted under clause (e) (4) (a)." The trustee is then required to pay to, or recover from, the current beneficiary the difference between the unitrust amount and any amount actually paid for any completed valuation year. (EPTL 11-2.4 [b] [6].) This provision envisages retroactive application of a unitrust regime. The required recomputation of preceding years' beneficial interests would serve no purpose if retroactive application were barred.

EPTL 11-2.4 (e) (4) (A), on which Surrogate's Court relied, is not to the contrary. This section provides that the optional unitrust provision

> "shall apply to a trust . . . as of the first year of the trust in which assets first become subject to the trust, unless the governing instrument or the court in its decision provides otherwise, or unless the election in accordance with clause (e) (1) (B) is expressly made effective as of the first day of the first year of the trust commencing after the election is made."

On the most plausible interpretation of this less than lucid provision, EPTL 11-2.4 (e) (4) (A) actually contemplates retroactiv-

ity, insofar as it provides the initial funding of the trust as a default starting point for unitrust treatment of a trust created on or after January 1, 2002. Certainly, EPTL 11-2.4 (e) (4) (A) should not be read as taking away from trustees the authority given them by EPTL 11-2.4 (d) (1) to specify the effective date of a unitrust election.

We therefore hold that a trustee may elect unitrust status for a trust retroactively to January 1, 2002, the effective date of EPTL 11-2.4. Appellant's remaining contentions lack merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed, etc.