*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 11, 2015                    519934
_____

In the Matter of the Estate of
    STANLEY J. FARRAR, Deceased.

LEIGHANN PETTY,
                    Appellant;              MEMORANDUM AND ORDER

MARTIN S. FARRAR, as Executor
    of the Estate of STANLEY J.
    FARRAR, Deceased,
                    Respondent.
_____

Calendar Date:  April 23, 2015

Before:  McCarthy, J.P., Egan Jr., Devine and Clark, JJ.

_____

    McPhillips, Fitzgerald & Cullum, LLP, Glens Falls (Edward
P. Fitzgerald of counsel), for appellant.

    John Winn, Granville, for respondent.

_____

Egan Jr., J.

    Appeal from an order of the Surrogate's Court of Washington
County (McKeighan, S.), entered June 24, 2014, which dismissed
petitioner's application, in a proceeding pursuant to SCPA 1809,
to determine the validity of petitioner's claim against
decedent's estate.

    In 1980, Stanley J. Farrar (hereinafter decedent) married
Esther Farrar (hereinafter Farrar), each of whom apparently had
children from prior relationships.  Farrar died in November 2003
and decedent died in March 2013.  Although decedent's will is not
included in the record on appeal, respondent (decedent's son and

the executor of decedent's estate) testified that decedent's will, among other things, bequeathed $1,000 to each of three named individuals, one of whom was petitioner (Farrar's great-granddaughter), who was residing with decedent at the time of his death.[1]  The remainder of decedent's estate, according to respondent, was to be divided equally among decedent's 11 children and stepchildren.[2]

At the time of his death, decedent was a resident of Middle Granville in Washington County and, for a number of years prior thereto, had maintained a money market account with Citizens Bank.  In January 2013, decedent — accompanied by petitioner — went to the Citizens Bank branch located in West Pawlet, Vermont and met with bank representative Donna Daigle to discuss obtaining a better rate of interest for his account.  To that end, Daigle opened a new account for decedent using the proceeds from the prior money market account.  According to Daigle, decedent's daughter, Angela McGinnis, was listed on the previous account with decedent; the signature card for the new money market account bore the names and signatures of decedent, McGinnis and petitioner.

Following decedent's death, McGinnis withdrew the balance

---

[1]  Petitioner, who apparently also was permitted under the terms of decedent's will to remain in his house until it was sold, vacated decedent's residence two weeks after his death.  Respondent testified that when he arrived at decedent's residence following petitioner's departure, he found the windows "open," the furnace "cranked up," the corresponding fuel tanks "empty" and the personal property "[g]one."  Petitioner admitted that she removed various items of personal property from the premises — claiming that she had respondent's permission to do so — and conceded that she refused to return such property until presented with a court order to that effect.

[2]  In addition to the $1,000 testamentary bequest, petitioner also received $20,000 in proceeds from a life insurance policy maintained by decedent and naming her as the beneficiary.

of the Citizens money market account — roughly $85,300 — and presented respondent with a bank check made payable to decedent's estate.[3]  Petitioner thereafter filed a notice of claim pursuant to SCPA 1803 demanding payment of one half of the value of the Citizens money market account as of the date of withdrawal. Respondent rejected petitioner's claim, prompting petitioner to commence this proceeding to determine the validity thereof. Surrogate's Court dismissed petitioner's application, finding, among other things, that the Citizens account was merely a convenience account, that petitioner was not a joint tenant with a right of survivorship and that, therefore, petitioner was not entitled to one half of the claimed proceeds.  This appeal by petitioner ensued.

We affirm.  Petitioner initially contends that Surrogate's Court erred in applying New York law to this matter.  As the Court of Appeals has instructed, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved" (Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], 81 NY2d 219, 223 [1993]; see Bonded Waterproofing Servs., Inc. v Anderson-Bernard Agency, Inc., 86 AD3d 527, 528 [2011]).  Upon reviewing the relevant statutes (see Banking Law § 675; Vt Stat Ann tit 8, § 14204) and applicable case law (see e.g. Matter of Corcoran, 63 AD3d 93 [2009]; In re Estate of Adams, 155 Vt 517, 587 A2d 958 [1990]), we are not persuaded that an actual conflict does in fact exist here. Rather, to our analysis, the law in New York and Vermont relative to survivorship rights is substantially the same.  Accordingly, and for the reasons that follow, we are of the view that petitioner does not prevail in either jurisdiction.[4]

_____

[3]  The check, which was in the amount of $85,950.36, included additional proceeds from another Citizens account that, according to respondent, was owned by decedent and to which McGinnis was a signatory.

[4]  Were we to determine that an actual conflict was present, we would find that New York law should apply as — on balance — New York is "the state with the most significant relationship

Banking Law § 675 (a) provides, in relevant part, that, "[w]hen a deposit of cash . . . has been made . . . in the name of [the] depositor . . . and another person and in form to be paid or delivered to either, or the survivor of them, such deposit . . . and any additions thereto made, by either of such persons, . . . shall become the property of such persons as joint tenants and the same, together with all additions and accruals thereon, . . . may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them." Further, Banking Law § 675 (b) provides that "[t]he making of such deposit . . . in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which the . . . surviving depositor . . . is a party, of the intention of both depositors . . . to create a joint tenancy and to vest title to such deposit . . ., and additions and accruals thereon, in such survivor." Thus, "[w]here an account has been formed in compliance with the statute, it is presumed, absent a showing of fraud or undue influence, that the depositors intended to create a joint tenancy with rights of survivorship" (Matter of Stalter, 270 AD2d 594, 595 [2000], lv denied 95 NY2d 760 [2000]). That said, the statutory presumption embodied in Banking Law § 675 (b) will not be triggered unless the signature card for the account in question specifically references rights of survivorship (see Matter of Grancaric, 91 AD3d 1104, 1105 [2012]; Matter of Corcoran, 63 AD3d at 95; Matter of Johnson, 7 AD3d 959, 959-960 [2004], lv denied 3 NY3d 606 [2004]; Matter of Stalter, 270 AD2d at 595; Matter of Coon, 148 AD2d 906, 907-908 [1989]; Matter of Timoshevich, 133 AD2d 1011, 1012 [1987]; Matter of Burns, 126 AD2d 809, 811 [1987]). Assuming the statutory presumption has been invoked, the burden then shifts to the party challenging the survivorship rights "to establish – by clear and convincing evidence – fraud, undue influence, lack of capacity or, as [respondent] asserts here, that the account[] [was] only opened as a matter of convenience and [was] never intended to be [a] joint account[]" (Matter of Grancaric, 91 AD3d at 1105; see Matter of Corcoran, 63 AD3d at 96; Matter of Stalter, 270 AD2d at

_____

with the particular issue in conflict" (Indosuez Intl. Fin. v National Reserve Bank, 98 NY2d 238, 245 [2002]).

595-596).

Here, the signature card for the Citizens money market account contains no survivorship language. Accordingly, under prevailing case law, petitioner simply is not entitled to the presumption afforded by Banking Law § 675 (b) (see Matter of Grancaric, 91 AD3d at 1106; Matter of Corcoran, 63 AD3d at 97; Matter of Stalter, 270 AD2d at 597; Matter of Timoshevich, 133 AD2d at 1012). Moreover, even if we were to afford petitioner the benefit of the statutory presumption, we nonetheless would find that respondent came forward with clear and convincing evidence to rebut that presumption.[5]

_____

[5] Nothing in the record suggests that petitioner received account statements for the Citizens account or, prior to decedent's death, had significant involvement in decedent's banking or financial affairs. Although petitioner did make two withdrawals from the subject account shortly before decedent's death, she testified that a portion of these funds was used to purchase a reclining chair for decedent's residence. Notably, the record reveals that decedent had a history of placing other individuals' names upon his bank accounts so that someone would be able to do his banking for him if he was unable to do so. Further, respondent testified that the proceeds from the Citizens account comprised the lion's share of decedent's estate, which, according to respondent, was to be divided evenly among decedent's 11 surviving children and stepchildren. Accordingly, affording petitioner a one-half interest in the proceeds of the Citizens account would not only greatly reduce the assets of the estate but, further, would result in petitioner receiving funds in an amount incommensurate with what she otherwise would have received through decedent's estate (see Matter of Johnson, 7 AD3d at 960). Finally, we cannot help but note that McGinnis, whose name had appeared on a number of decedent's accounts over the years, including the Citizens account at issue, apparently did not believe that she possessed a survivorship interest in the Citizens account — as evidenced by the fact that, following decedent's death, she closed out that account and promptly tendered the resulting proceeds to respondent to be included in decedent's estate. Under these circumstances, we would conclude

Nor are we persuaded that petitioner made out a valid common-law claim for entitlement to the subject proceeds. Although Daigle indeed testified that decedent indicated that all three individuals — decedent, McGinnis and petitioner — were to be owners on the Citizens account, given decedent's history of establishing convenience accounts, Daigle's testimony on this point, "[a]t best, . . . invites conjecture as to decedent's intent" in opening the account (Matter of Timoshevich, 133 AD2d at 1012) — particularly when viewed in the context of decedent's overall estate planning scheme. For all of these reasons, we find that petitioner has not established a valid claim against decedent's estate and, therefore, Surrogate's Court properly dismissed her application.

Finally, and as alluded to previously, petitioner would not prevail even if we were to apply Vermont law. Vermont's statutory counterpart to Banking Law § 675 (b) provides, in relevant part, that "[t]he recital of the words 'payable to either or to the survivor' or words of like effect in the order creating such account and signed by the person or persons who furnish the funds for such deposit shall be conclusive evidence, as between the payees and their legal representatives, of the creation of an absolute joint account" (Vt Stat Ann tit 8, § 14204 [b]). No such language appears upon the signature card used to open the Citizens account, which is the only document in the record bearing the signatures of decedent, petitioner and McGinnis. Thus, in our view, petitioner would not be entitled to the benefit of Vermont's statutory presumption. Additionally, as the record does not otherwise contain clear and convincing evidence that decedent intended to establish a joint account with a right of survivorship (see In re Estate of Adams, 155 Vt at 520-521, 587 A2d at 960-961), petitioner cannot make out a common-law claim under Vermont law. Petitioner's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

_____

that the subject account was opened simply as a matter of convenience for decedent (see e.g. Matter of Corcoran, 63 AD3d at 97; Matter of Johnson, 7 AD3d at 960).

McCarthy, J.P., Devine and Clark, JJ., concur.


ORDERED that the order is affirmed, with costs.




ENTER:

Robert D. Mayberger
Clerk of the Court