Matter of Ostrowski (2025 NY Slip Op 50708(U))

[*1]

Matter of Ostrowski

2025 NY Slip Op 50708(U)

Decided on April 23, 2025

Surrogate's Court, Erie County

Mosey, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 23, 2025
Surrogate's Court, Erie County

In the Matter of the Estate of Mary Virginia Ostrowski, 
 a/k/a MARY V. OSTROWSKI, Deceased.

File No. 2020-160/H

COLE, SORRENTINO, HURLEY, HEWNER & GAMBINO, P.C.
Appearing for Jennifer Flannery, Esq., Erie County Public Administrator, Temporary Administrator CTA
Thomas F. Hewner, Esq. and Keith Rosso, Esq., of Counsel
HODGSON RUSS LLP
Appearing for Catherine Amico, Suspended Co-Executor
Catherine Grantier Cooley, Esq. and Jillian A. Brevorka, Esq., of Counsel
JOSEPH G. MAKOWSKI, ESQ.
Appearing for Mary Frances Ostrowski, Suspended Co-Executor 
LAW OFFICE OF RALPH C. LORIGO
Appearing for James Ostrowski 
Jon Minear, Esq., of Counsel
and
JAMES OSTROWSKI, ESQ.
Also Appearing Pro Se
MICHAEL OSTROWSKI, SUSAN OSTROWKSI and 
JULIE OSTROWSKI
Appearing Pro Se

Acea M. Mosey, S.

Decedent died on March 24, 2019 at age 90. Her husband William — an attorney and judge — had pre-deceased her at age 86 in September, 2011, and she was survived by six children: Mary Frances Ostrowski [hereafter, petitioner and/or Mary Frances], Catherine Amico [hereafter, Catherine], Michael Ostrowski [hereafter, Michael], Susan Ostrowski [hereafter, Susan], James Ostrowski [hereafter, James] and Julie Rebbechi [hereafter, Julie].
Decedent's Last Will and Testament, dated April 29, 2016, divided her estate equally among her six children and nominated Mary Frances and Catherine as co-executors. Initially following decedent's death in March, 2019, no estate proceeding was filed in this court. An [*2]email from Mary Frances to all five of her siblings, dated September 5, 2019, gives a general explanation of what had apparently been happening in the intervening period:
"I wanted to give an update of mom's (and essentially dad's) estate so we're all on the same page. 
 Right now mom's estate consists of her furniture and her 3 bank accounts, which are jointly titled in her name and mine. Mom directed in her will that the funds be split evenly between her children. I want to share these accounts equally between all of us siblings, without having to open an estate in court . . . 
 Mom's latest bank account statements are attached. The Citizens account is basically from the sale of the house. The M&T Power Checking was her regular checking account. The M&T Power Money Market was basically her savings account"  (Exh. I in evidence, emphasis added).
Ultimately, by petition dated January 8, 2020, Mary Frances sought to probate decedent's Will, but requested that letters testamentary issue to her alone. The verified petition filed on her behalf by her then-attorney, David Heim, Esq. [hereafter, Heim], indicated that decedent's estate consisted solely of personal property with a value of $330,000. 
Susan and James filed waivers and consented to probate with Mary Frances as sole fiduciary.
Catherine responded to the petition, consenting to probate but requesting that, as provided for in the Will, she be co-fiduciary with her sister Mary Frances.
Decedent's Will was admitted to probate by this Court on September 8, 2020, and letters testamentary issued to Mary Frances and Catherine pursuant to the Will as co-executors [FN1]
. Almost immediately after their appointment, issues arose among all the parties, involving many appearances before this Court.
Stripped to essentials, it is now  and has been for some time as relations among decedent's children deteriorated [FN2]
 the position of Mary Frances that there are not now, 
and never were, any assets in this estate, that the estate has no property, and that there is 
nothing for estate distribution.
Mary Frances, at the direction of this Court, filed a petition in July, 2024, for judicial settlement of her accounts as co-fiduciary of the estate [FN3]
, and that accounting has been objected to [*3]by Catherine and Michael. Significant discovery  both before and after that accounting petition was filed  has taken place, and the issue of what are, or should be, assets of decedent's estate, if any, was set down before me for an evidentiary hearing. That hearing took place over several days in December, 2024, concluding in late-January, 2025, following which the parties were given time to file memoranda of law on the issues.
The matter having been finally submitted, I now find and decide as follows.
(I)
Several witnesses testified at the hearing:
(1) December 9, 2024 — Jennifer Ray [Citizens Bank]; Jennifer Austin[M&T Bank]; James Ostrowski, Esq., and Catherine Ostrowski-Martin, Esq. [daughter of Mary Frances];
(2) 
December 17, 19, and 23, 2024 — Mary Frances;
(3) 
 January 23, 2025 — David Heim, Esq.
The evidence establishes that decedent owned several bank accounts, as follows: (1) M&T Bank account ending in "9037" [hereafter, M&T Account 9037]; (2) M&T Bank account ending in "0486" [hereafter, M&T Account 0486]; and (3) Citizens Bank account ending in "1231" [hereafter, CB Account 1231]. Mary Frances claims that she owns all three accounts as the surviving co-tenant on each account, and she argues that all three accounts were established by decedent as joint accounts with Mary Frances with rights of survivorship. And by "survivorship" Mary Frances now means that all monies in the accounts belonged to her upon decedent's death and that she can do with those funds whatever she chooses.
Catherine contends that all three accounts at issue were set up with Mary Frances as convenience accounts only and that, for that reason, the balance in all three accounts at decedent's death constituted estate assets for distribution pursuant to decedent's Will.
The banking documents admitted into evidence at the hearing show the following. M&T Account 9037 was originally opened by decedent on January 9, 1995. Thereafter, decedent's husband, William, was added to the account. After William died, Mary Frances was substituted in his place on or about April 17, 2012. Similarly, decedent's M&T Account 0486 was originally opened by her on March 11, 1999, with William added to the account on or about February 9, 2011. When William died, Mary Frances was added to the account in his place on or about April 17, 2012. 
CB Account 1231 was set up largely to hold the net proceeds from the sale of decedent's home in 2016.
As noted, Mary Frances was decedent's attorney-in-fact under instruments executed in 2011 and 2016. Her POA accounting alleges that there were no "POA transactions". The POA Accounting contends that the only bank accounts established with decedent and Mary Frances were joint accounts [specifically the M&T Accounts and the Citizens Bank Account]. As such, Mary Frances says she does not need to account because, in her view, she was joint owner of the three accounts at issue.

 (II)
The core issue before me is whether the three disputed Bank Accounts are joint accounts with a rights of survivorship or whether Mary Frances' name was placed on the accounts solely for convenience.
New York Banking Law §675 provides that:
"(a) When a deposit of cash, securities, or other property has been made . . . in or with any banking organization . . . in the name of such depositor or shareholder and another person and in form to be paid or delivered to either, or the survivor of them, such deposit or shares . . . shall become the property of such persons as joint tenants and . . . shall be held for the exclusive use of the persons so named and may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them . . . .
(b) 
The making of such deposit or the issuance of such shares in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which the . . . surviving depositor or shareholder is a party, of the intention of both depositors or shareholders to create a joint tenancy and to vest title to such deposit or shares, and additions and accruals thereon, in such survivor. 
The burden of proof in refuting such prima facie evidence is upon the party or parties challenging the title of the survivor" (emphasis added).
When an account has been established in accordance with the statute, and the "survivorship" language appears on the account's signature card, a presumption arises that the parties intended to create a joint tenancy with right of survivorship (Matter of Corcoran, 63 AD3d 93, 96-97 [ 2009]; Matter of Stalter, 270 AD2d 594, 595 [ 2000]). If the Banking Law §675 presumption applies, the burden shifts to the opposing party "to either establish fraud, undue influence or lack of capacity [citations omitted] or tender direct or circumstantial proof to support an inference 'that the joint account was established as a convenience and not with the intention of conferring a present beneficial interest on the other party to the account' (Fischedick v. Heitmank, 267 AD2d [592], at 592; [balance of citations omitted])" (Matter of Corcoran, supra, at 96; see also Matter of Stalter, supra, at 595, and Matter of Oliveri, 2009 NY Slip Op 32213[U][2019]). "A party seeking to overcome [the] presumption[ ] may succeed by the tender of clear and convincing proof" (Matter of Farnsworth, 2018 NYLJ LEXIS 1379 [dec. Mar. 28, 2018] [emphasis added]).
The presumption can be rebutted "by providing direct proof that no joint tenancy was intended or substantial circumstantial proof that the joint account[s] had been opened for convenience only" (Harrington v Brunson, 129 AD3d 1581, 1582 [2015] [internal quotation marks and citation omitted]; see also Matter of Richichi, 38 AD3d 558, 559 [2007]; Fragetti v Fragetti, 262 AD2d 527 [1999]; and Hom v Hom, 101 AD3d 816 [2012]).
If, however, there is a fiduciary relationship between a decedent and the alleged joint tenant, "the transaction will be subject to closer scrutiny" (Matter of Zorskas, 20 Misc 3d 1110[A] [2008]). "By virtue of a fiduciary relationship, the joint tenant will have the burden to prove, by clear and convincing evidence, that the account was not a matter of convenience" (id.).
Where an account's signature card does not contain survivorship language, even if the account in question is designated as "joint," Banking Law §675's presumption does not apply (Sweetman v Suhr, 126 AD3d 1438, 1439 [ 2015]; see also Estate of Coon, 148 AD2d 906 [*4][1989] and Matter of Ancell, 191 Misc 2d 252, 254 [2002]). "In that circumstance, the presumption is that the account is held by the two co-tenants as tenants in common" (Matter of Oliveri, supra, citing EPTL 6-2.2[a]]). The person claiming rights as a survivor may rebut this presumption by proof that the parties intended to create a true joint account with right of survivorship (Matter of Degnan, 55 AD3d 1238, 1239 [2008]; see also Matter of Goldstein, NYLJ, Aug 9, 2022 at 17, col 2, 2022 NYLJ LEXIS 1230 [2022]). "A correspondingly high order of evidence is required which must demonstrate clear and convincing intent to create a joint tenancy" (Matter of Celentano, 41 Misc 3d 1206 [A] [2013] [internal citations and quotation marks omitted]).

(a)

 M&T Accounts 9037 and 0486
Mary Frances testified she was added as a joint account holder to decedent's M&T Accounts 9037 and 0486.
At the hearing, Jennifer Austin [hereafter, Austin], an M&T Bank employee with over 28-years of experience at the bank, identified a form titled "Consumer Account Updated Change Request Add/Delete Customer Maintenance" as an account's "signature card." Mary Frances did not submit a copy of this form adding her to M&T Account 9037. Instead, Mary Frances offered a Consumer Deposit Account Opening Request for M&T Account 9037 which was signed by decedent and Mary Frances (see Petitioner's Exhibit 5). Thus, the record contains no signature card for M&T Account 9037.
Austin further testified that the Consumer Deposit Account Opening Request offered by Mary Frances in lieu of the account's signature card added Mary Frances to M&T Account 9037. This Consumer Deposit Account Opening Request included language that, "[b]y signing below", the signatories "acknowledge and agree that if the account is opened in the names of two or more individuals, the account will be a Joint Account with Right of Survivorship unless it is a fiduciary or custodial account" (emphasis added). Accordingly, M&T Account 9037 is entitled to the statutory presumption afforded by Banking Law § 675(b).
As to Account 0486, a "Consumer Account Updated Change Request Add/Delete Customer Maintenance," was signed by decedent and Mary Frances and dated April 17, 2012.[FN4]
That "Consumer Account Updated Change Request" includes the language that, "[b]y signing below", the signatories "acknowledge and agree that if the account is opened in the names of two or more individuals, 
the account will be a Joint Account with Right of Survivorship unless it is a fiduciary or custodial account" (emphasis added). Accordingly, M&T Account 0486 is entitled to the statutory presumption afforded by Banking Law § 675(b).
Although the best evidence of a bank account's title is the signature card (Estate of Goldstein, supra), our Appellate Division has held that, "[i]n order for that statutory presumption to apply, 'words of survivorship must appear on the signature card or ledger that creates the bank account'" (Matter of Najjar [Sanzone], 195 AD3d 1483, 1485 [2021] [finding that the statutory presumption created under Banking Law § 675 was inapplicable to accounts for failure to submit signature cards or ledgers which included the required survivorship language]).
With the presumption applicable to M&T Accounts 9037 and 0486, the burden shifts to objectants "to either establish fraud, undue influence or lack of capacity or tender direct or circumstantial proof to support an inference that the joint account was established as a convenience and not with the intention of conferring a present beneficial interest on the other party to the account" (Matter of Corcoran, supra, at 97 [internal quotation marks and citations omitted], emphasis added).
There are several factors rebutting the presumption that M&T Account 9037 and 0486 are joint accounts with rights of survivorship and which support the conclusion that each is a convenience account:
First, there is Mary Frances' testimony that she did not deposit any of her own personal funds into the Bank Accounts or towards the real property which funded the Citizens Bank account (see Harrington v Brunson, supra, at 1582; Matter of Najjar, 75 Misc 3d 1225[A] [2022]);
Second, the account statements were only mailed to decedent (Matter of Cooper, 6 Misc 3d 1001[A] [ 2004]);
Third, Mary Frances testified that she received a $30,000 sum and an $8,000 sum from one of decedent's M&T accounts which she could not identify. She testified that she considered it to be a "loan," and, therefore, she repaid the sums with interest;
Finally, and perhaps most significantly, the creation of joint accounts with rights of survivorship completely deviates from, and entirely eviscerates, decedent's testamentary plan under her Will (see Matter of Farrar, 129 AD3d 1261, 1264-1265 [2015]). In that regard, Mary Frances herself sought to probate decedent's Will knowing that the Bank Accounts were the only estate assets and, in effect, she listed their aggregate value as comprising decedent's estate assets on her verified probate petition (id.; see also Harrington v Brunson, supra, at 1582, quoting Matter of Yaros, 90 AD3d 1063, 1064 [2011]).
Mary Frances' own conduct and statements fully support the conclusion that the accounts were convenience accounts. This is a major consideration in determining whether a bank account was opened as a matter of convenience or as a joint account (see Matter of Corcoran, supra, at 95-98; Matter of Camarda, 63 AD2d 837, 839 [1978]). Mary Frances' September 2019 email to her siblings, sent months after their mother's death, stated that the Bank Accounts would be split equally among decedent's six children (see Matter of Cooper, supra).
It is clear from the testimony that Mary Frances considered the M&T Bank accounts to be decedent's without any actual ownership interest in herself.
Under the circumstances of this case, and given decedent's expressed testamentary dispositions, I find that decedent did not intend to give her entire estate to one of her six children by creating joint accounts with ownership rights in that child  Mary Frances — and thereby leaving nothing for her other five children. I conclude, therefore, that Mary Frances was added to those M&T accounts only as a matter of convenience.
The testimony of M&T Bank employee Austin further supports this finding. Austin testified that M&T Bank does not offer any convenience accounts despite being statutorily required to do so under Banking Law § 678. Indeed, Austin testified as follows:
"Q. Are you aware of under 678 of the Banking Law that M&T offers convenience accounts in accordance with 1991 law?
A. No.
Q. Okay. Do you give any legal advice at the bank?
A. No."
Failing to offer convenience accounts leaves individuals like decedent with having to open joint accounts with alleged rights of survivorship when that is clearly not what is desired. This problem is further exacerbated by Banking Law §675 which presumes the joint account's surviving co-tenant is entitled to actual ownership of the account's proceeds unless and until that presumption is successfully rebutted.
I conclude that M&T Accounts 9037 and 0486 were each opened as a matter of convenience only, and neither was a joint bank account with the right of survivorship. I further conclude that M&T Accounts 9037 and 0486 are each an asset of decedent's estate subject to distribution in accordance with decedent's Will, and the balance which remained in that account as of decedent's date of death must now be turned over to the Public Administrator.

 (b)
CB Account 1231
A Citizens Bank "Personal Signature Card" for CB Account 1231, signed by both decedent and Mary Frances, did not contain any survivorship language. Although the Personal Signature Card referred to separate agreements — which stated that rights of survivorship are created when opening a joint account  referencing separate agreements containing survivorship language is insufficient to invoke the statutory presumption of Banking Law § 675 (Sweetman v Suhr, supra, at 1440; see also Matter of Farrar, supra, at 1264).
The "Agreement and Signatures" section of the Personal Signature Card reads, in relevant part, that the signatories received copies of any Citizens Bank documents and agreements provided to them by the Bank. In signing the signature card, the signatories acknowledged that they had read and understood the documents and agreed to all the terms of said agreements. However, the effect of the acknowledgment is vitiated because there is no proof that decedent actually knew of, or consented to, the survivorship language in the agreement (Matter of Sledziona, 56 Misc 3d 1206[A] [ 2017]). Thus, the statutory presumption of Banking Law § 675 does not apply here (Sweetman v Suhr, supra, at 1440).
Where the 675 presumption does not apply, Mary Frances "has the burden of establishing that the [bank account was a] joint tenanc[y] or a gift entitling [her] to rights as the survivor" (Matter of Degnan, supra, at 1239, quoting Matter of Seidel, 134 AD2d 879, 880 [1987]).
I find that Mary Frances failed to meet her burden, particularly in light of decedent's testamentary estate plan which provided for equal distribution among her six children. Mary Frances' contention that the Citizens Bank account was a joint account with survivorship rights in her, and that it was a gift to her, is completely untenable given the proof before me at the hearing.
Moreover, even if Mary Frances was entitled the benefit of the statutory presumption, I would nevertheless find that objectants have establised clear and convincing evidence to rebut that presumption.
As with M&T, Citizens Bank banker Jennifer Ray [hereafter, Ray], an employee with the bank for over twenty-seven years, testified that Citizens Bank does not offer convenience accounts despite being statutorily required to do so under Banking Law § 678. When asked whether she was aware of convenience accounts, Ray testified:
"A. I've never heard the term convenience - - well, convenience accounts as PDA.
Q. So under 678, Citizens Bank does not provide convenience accounts as stated in the [*5]law of 1991, correct?
A. I would have to agree with that because I've never heard convenience accounts.
Q. As to be provided by all banks. And Citizens Bank does not provide that?
A. Correct.
. . .
"Q: Citizens Bank does not offer a convenience account, do they?
"A. No, not that I am aware of.
Q. You've never heard of such an account?
A. No" (emphasis added).
Accordingly, I find that there has been a credible showing that CB Account 1231 was opened as a matter of convenience only and that it was not a joint bank account with the right of survivorship. Thus, I conclude that CB Account 1231 is an asset of decedent's estate subject to distribution in accordance with decedent's Will, and the balance which remained in that account as of decedent's date of death must be turned over to the Public Administrator.

 (C)
My conclusion, supra, about these bank accounts at issue having been established by decedent with Mary Frances as convenience accounts only, with no ownership rights of survivorship in Mary Frances, can be conclusively demonstrated by looking at Mary Frances' own testimony and submissions.
In her post-hearing brief [FN5]
, counsel wrote as follows:
"Mary F. Ostrowski testified that she never used any power of attorney granted by her mother. [369:10:3-7]. She testified that a second power of attorney signed by her mother in 2016 never took effect since her mother remained fully competent. [369: 34:4-35:5] and that it replaced the first power of attorney her mother had executed. [369:35:16-21]. She testified that in a September 13, 2019 email to her siblings, she stated the following: 'Mom specifically put me on her accounts to make administration easy, knowing it would pass to me when she passed away. Mom asked me to distribute the funds equally between the siblings. This would avoid expensive and time-consuming probate proceedings by leaving the bank accounts out of the estate. Mom also expressed that this would protect her privacy as she didn't believe it was anyone's business to who she was giving her money.' [370:45:12-19]".[FN6]
Mary Frances' testimony, quoted supra, conclusively demonstrates that these three accounts were for "convenience" only [FN7]
. Looked at from the most favorable view to Mary [*6]Frances, and by own admission, decedent added her to these accounts, in effect, as a de facto "trustee". See, e.g., Matter of Buxton Sinclair, 1 Misc 3d 903 [A][2007] and Matter of Frederico [Aloisi], 81 Misc 3d 1221 [A][2023] ["Where a party acts like a trustee and assumes the duties of a trustee, that party will be considered a de facto trustee and held to account for trustee-related activities, the same as a de jure trustee"].
Mary Frances' sole responsibility and entitlement to deal with these assets was to pay out what was in the accounts when decedent died to decedent's six (6) children in equal shares. She was, again, made de facto trustee of these funds, irrespective of the nomenclature on the documents and the like.
As a de facto trustee, Mary Frances was bound to carry out her mother's wishes, and her mother's wishes are entirely controlling (Matter of Chase Manhattan Bank, 6 NY3d 456, 460 [2006]). As our Court of Appeals put it in Matter of Wallens, 9 NY3d 117, 122 [2007]:
"It is also well settled that 'a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect' (Birnbaum v Birnbaum, 73 NY2d 461, 466 [1989], citing Meinhard v Salmon, 249 NY 458, 463-464 [1928] [other citation omitted]). As Chief Judge Cardozo famously stated, '[a] trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior' (Meinhard, 249 NY at 464). 'This is a sensitive and 'inflexible' rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty' (Birnbaum, 73 NY2d at 466 [citation omitted]). We have recognized that a 'trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary' (Matter of Heller, 6 NY3d 649, 655 [2006], quoting Restatement [Second] of Trusts § 170 [1]; see also Mercury Bay Boating Club, 76 NY2d at 270 ['(T)he trustee must administer the trust for the benefit of the beneficiaries and cannot compete with the beneficiaries for the benefits of the trust corpus'])".
Based upon the hearing record in its entirety, I conclude that M&T Account 9037 and M&T Account 0486, and CB Account 1231, are all convenience accounts, not joint bank accounts with rights of survivorship. I find that whatever balance remained in these accounts at the date of decedent's death are assets of decedent's estate subject to distribution in accordance with decedent's Will, and these assets must be immediately turned over to the Public Administrator. Mary Frances is directed to turn over 
the date of death balance, plus statutory interest from March 24, 2019 [decedent's date of death], through the date full payment is remitted (see Matter of Stanka Sucich, NYLJ, Sep. 12, 2022 at 17, col 1, 2022 NYLJ LEXIS 973 [2022]; see Matter of Tsivchynsky, 2008 NYLJ LEXIS 2567 [2008]; CPLR 5001[a],[b]; and CPLR 5004]).
Finally, I set this entire matter down for a status appearance before me on June 3, 2025, at 9:30 a.m. to schedule whatever is next required in the accounting proceeding (or otherwise) to [*7]bring this estate to conclusion.
This decision shall constitute the Order of this Court, and no other or further order shall be required.
DATED: April 23, 2025
BUFFALO, NEW YORK
HON. ACEA M. MOSEY
Surrogate Judge

Footnotes

Footnote 1:Mary Frances filed a notice of appeal from this Court's determination to have Catherine act as co-fiduciary. As far as is known, that appeal was never perfected. Subsequently, and for reasons relating to the problems between Mary Frances and Catherine, this Court suspended both co-executors and appointed the Erie County Public Administrator as temporary administrator CTA of this estate.

Footnote 2:If one were to characterize this record, it appears that Mary Frances and James, joined frequently by Susan and Julie, act (and react) in a contradicting way to Catherine and Michael, and vice-versa.

Footnote 3:Mary Frances, with whom decedent lived for the last four years of her life, was decedent's power of attorney [POA] for a number of years, also filed a separate POA accounting at the direction of this Court. That accounting, verified February 20, 2024, states that "between 2011 and 2019, there was non-utilization of the [POA]" and, thus, "there were no POA transactions . . . between 2011 and March 24, 2019." That accounting has formally been objected to by Catherine, and informally by Michael. See, generally, subrecord E of the estate file. 

Footnote 4:Mary Frances did not produce a Consumer Deposit Account Opening Request for M&T Account 0486 even though she had submitted, and relied upon, that document for M&T Account 9037.

Footnote 5:The brief was submitted by counsel on behalf not only of Mary Frances but also on behalf of James, Susan and Julie.

Footnote 6:The numbers in the quoted portion of Mary Frances' post-hearing brief refer to the NYSCEF efiled document number, followed by the page and line number of what is being quoted.

Footnote 7:Although I found most of the testimony from Mary Frances, her daughter Catherine Ostrowski-Martin, and her brother James, to be entirely self-serving and not particularly reliable, the testimony from Mary Frances referenced in this paragraph is entirely credible because it constitutes admissions against her self-interest (see, generally, Prince, Richardson on Evidence [11th ed., Farell], §8-201 et seq.).