[846 NE2d 806, 813 NYS2d 361]

In the Matter of the Judicial Settlement of the Final Account of the CHASE MANHATTAN BANK (Successor by Merger to the CHASE MANHATTAN BANK, N.A., Successor by Merger to CHASE LINCOLN FIRST BANK, N.A., Successor in Interest to LINCOLN FIRST BANK, N.A., Successor by Consolidation to LINCOLN FIRST BANK OF ROCHESTER), as Trustee under the Agreement Dated December 20, 1973 of A. CHARLES PIOCH, for the Benefit of KATHLEEN M. PIOCH, Respondent. CATHERINE H. HYMAN et al., Respondents; ST. JOHN FISHER COLLEGE et al., Appellants.

Argued February 14, 2006; decided March 30, 2006

## POINTS OF COUNSEL

*Harter, Secrest & Emery LLP,* Rochester (*A. Paul Britton, Robert G. Greene* and *Martin W. O'Toole* of counsel), for appellants. I. The lower courts erred in approving the trustee's arbitrary designation of deposits into the lifetime trust as income. (*Matter of Grove,* 86 AD2d 302; *Mercury Bay Boating Club v San Diego Yacht Club,* 76 NY2d 256; *Matter of Fabbri,* 2 NY2d 236; *Hemingway v Hemingway Found.,* 193 AD2d 559; *Matter of Malasky,* 275 AD2d 500; *Matter of Manning v Glens Falls Natl. Bank & Trust Co.,* 265 AD2d 743; *Nau v Vulcan Rail & Constr. Co.,* 286 NY 188; *Matter of Gagliardi,* 55 NY2d 109; *Liberty Mgt. & Constr. v Fifth Ave. & Sixty-Sixth St. Corp.,* 208 AD2d 73; *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48.) II. Even if the deposits from the charitable remainder annuity trust were properly deemed income, the lifetime trust included an implied directive that unexpended income be paid to the charities upon Kathleen Pioch's death. (*Matter of Friday,* 148 Misc 899; *Matter of Cheney,* 85 Misc 2d 66; *Matter of Outerbridge,* 91 Misc 2d 686; *Matter of Littman,* 165 Misc 285; *Matter of Dreicer,* 155 Misc 817.)

*Woods Oviatt Gilman LLP,* Rochester (*William G. Bauer, Robert W. Croessman* and *Robert W. Kessler* of counsel), for Chase Manhattan Bank, respondent. I. The funds received by the

lifetime trust for Kathleen Pioch's benefit should be classified as income. (*Matter of Grove,* 86 AD2d 302; *Mercury Bay Boating Club v San Diego Yacht Club,* 76 NY2d 256; *Matter of Gagliardi,* 55 NY2d 109; *Matter of Glaser,* 19 AD2d 354, 14 NY2d 895; *Matter of Herzog,* 301 NY 127; *Matter of Bird,* 69 Misc 2d 1015; *Matter of Vail,* 91 Misc 2d 398.) II. New York State law and the terms of the lifetime trust mandate that the undistributed income be paid to the estate of Kathleen Pioch. (*Matter of Friday,* 148 Misc 899; *Matter of Cheney,* 85 Misc 2d 66; *Matter of Hopkins,* 119 Misc 2d 218; *Matter of Saxton,* 219 AD2d 85.)

*Wiedman, Vazzana, Corcoran & Volta, P.C.,* Rochester (*James G. Vazzana* and *Sandra E. Volta* of counsel), for Frank B. Iacovangelo, respondent. I. As affirmed by the Appellate Division, the Surrogate's Court properly determined that the funds received by the lifetime trust for Kathleen Pioch's benefit should be classified as income. (*Matter of Manning v Glens Falls Natl. Bank & Trust Co.,* 265 AD2d 743.) II. There is an important distinction between accrued income and accumulated income. (*Matter of Juilliard,* 238 NY 499; *Matter of Dexter,* 134 Misc 195; *Matter of Balsamo,* 136 Misc 113; *Matter of Cheney,* 85 Misc 2d 66.)

### OPINION OF THE COURT

GRAFFEO, J.

In this proceeding by a trustee seeking judicial settlement of a final account, we are asked whether the trustee's distribution of trust assets comported with the settlor's intent. We conclude that it did not and therefore reverse the order of the Appellate Division.

In December 1973, A. Charles Pioch (Charles) established two trusts designed to benefit himself, his daughter Kathleen and two charitable institutions. The first, a charitable remainder annuity trust (the CRAT), was funded with assets valued at $400,000. The second, a lifetime trust (the LTT), was created with assets worth approximately $121,000. Petitioner Chase Manhattan Bank and its predecessors served as the trustee of both trusts.

The CRAT directed the Bank to pay to the LTT an annual amount equal to 6% of the initial value of the assets deposited—about $24,000 per year paid in quarterly installments of $6,000—for the benefit of Charles. Upon Charles's death, the CRAT instructed the Bank to continue making the quarterly payments to the LTT "for the benefit of [Charles's] daughter,

KATHLEEN PIOCH, during her lifetime." After her death, the remainder of the CRAT would pass to St. John Fisher College.

The preamble of the LTT required the Bank to "hold, administer and distribute all of the aforesaid assets [i.e., the $121,000] (together with all additions thereto and all reinvestments thereof) as the principal of a trust estate, for the benefit of the Grantor, in accordance with the terms and provisions hereinafter set out." The Bank was to "pay or apply the net income to the use of [Charles] . . . during his life," and was authorized to invade the principal for his support, welfare and comfort. The LTT provided that, upon Charles's death, assuming Kathleen survived him,

> "the [LTT] shall continue for the benefit of [Kathleen], and the Trustee shall apply the income and so much of the principal as in its discretion it shall deem necessary, for the support, maintenance and general welfare of [Kathleen], during her life. The Trustee shall pay, so far as possible, all specific bills for [Kathleen's] living expenses, thus making certain that her rent, her utilities, her food, clothing and medical expenses are paid by the Trustee directly. [Kathleen] shall not be given any large sums of money, but only a small allowance by the Trustee every week to meet her personal needs."

At the time of Kathleen's death, the LTT directed the Bank to pay the remaining principal, together with any accrued income, to St. John Fisher College and the Lutheran Church of the Incarnate Word (collectively objectants).

Charles died in 1975 shortly after creating the trusts. In accordance with the terms of the LTT, the Bank began paying Kathleen's living expenses. The record reveals that Kathleen had limited mental capacity and for the next 25 years, until her death, the Bank paid her bills directly and regularly deposited modest sums into a checking account for her personal needs. Despite these expenditures, when she died in July 2000 the LTT contained assets exceeding $800,000. Of that amount, $526,533 represented the accumulation of the quarterly payments from the CRAT that had not been used to pay Kathleen's expenses during her life.

Treating the $526,533 from the annuity payments as Kathleen's income, the Bank distributed the full sum to her estate. Since Kathleen died without a will, the money passed through

intestacy to respondents Catherine Hyman, Arlene La Bounty, Lois Carr, Mary Salyer, Paul Hasert and Linda Hallen, all blood relatives of Charles who had not been named as beneficiaries of either trust. In August 2001, the Bank filed an accounting for the LTT and initiated this judicial settlement proceeding.

Objectants filed objections to the Bank's final account, asserting that Charles intended the charities to receive the remaining accumulated quarterly annuity payments—the $526,533—upon Kathleen's death. Objectants argued that the quarterly payments from the CRAT to the LTT were more appropriately categorized as principal rather than income and, alternatively, even if the payments were considered income, the terms of the LTT manifested an intent by Charles that the charities receive any accumulation of such income. As a result, objectants requested the Surrogate to surcharge the Bank for $526,533, plus interest. The Attorney General appeared on objectants' behalf and filed similar objections.

Surrogate's Court dismissed all of the objections and granted the petition for judicial settlement of the final account of the LTT, thereby approving the disbursements by the Bank. The Appellate Division, with two Justices dissenting, affirmed. The majority held that the Bank's characterization of the annuity payments as income to the LTT was consistent with the settlor's intent. The majority also rejected objectants' alternative argument that the LTT required the Bank to accumulate any excess income for their benefit. The dissenters, on the other hand, would have sustained the objections, reasoning that the annuity payments from the CRAT to the LTT constituted additions to the principal of the LTT rather than income. Objectants appeal as of right based on the two-Justice dissent.

In determining whether Kathleen's estate or objectants are entitled to the amount in dispute, Charles's intent is controlling (*see Mercury Bay Boating Club v San Diego Yacht Club*, 76 NY2d 256, 267 [1990]; *Matter of Gilbert*, 39 NY2d 663, 666 [1976]). It is well settled that "the trust instrument is to be construed as written and the settlor's intention determined solely from the unambiguous language of the instrument itself" (*Mercury Bay Boating Club*, 76 NY2d at 267; *see also Central Union Trust Co. v Trimble*, 255 NY 88, 93 [1930] ["We are to search, not for the probable intention of the settlor merely, but for the intention which the trust deed itself, either expressly or by implication, declares. We are to ascertain the intention from the words used and give effect to the legal consequences of that intention when ascertained"]).

Here, regardless of whether the quarterly annuity payments are classified as principal or income in the LTT, the terms of the LTT demonstrate Charles's intent that any funds not expended on Kathleen's behalf be distributed to objectants.[1] If we characterize the CRAT payments as principal, objectants would be entitled to the disputed funds because the LTT expressly directed the Bank to distribute any remaining principal to them. But even if we adopt the contrary position and determine that the CRAT payments constituted income, it is clear Charles intended that Kathleen receive income from the LTT sufficient to satisfy her personal needs and no more. The LTT expressly prescribed that monies provided for Kathleen's benefit during her lifetime be related to her "support, maintenance and general welfare." Charles did not require that the full amount of the quarterly funds transferred to the LTT be paid to Kathleen herself. This contrasts with the provision of the LTT that entitled Charles to all of the income, without limitation, while he was alive. Instead, after Charles's death, the Bank was to apply the income on Kathleen's behalf by paying her bills directly and giving her "only a small allowance" for her personal needs. In addition, Charles instructed the Bank not to give Kathleen "any large sums of money" and she was not vested with a power of appointment over the trust assets.

By limiting the disbursement of income to Kathleen to a sum sufficient to cover her needs, Charles anticipated that the Bank might pay out less than all the income for his daughter's benefit and therefore authorized the Bank to accumulate any income not expended (*see* EPTL 9-2.1; Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 9-2.1).[2] Generally, where a trust requires the trustee to apply only so much of the income as is necessary for the beneficiary's needs, any unexpended income accumulated by the trustee passes to the remainder beneficiaries (*see Matter of White*, NYLJ, Jan. 19, 2001, at 30, col 3 [Sur Ct, Nassau County]; *Matter of Cheney*, 85 Misc 2d 66, 69-70 [Sur Ct, Nassau County 1976]; 3A Fratcher, Scott on Trusts § 235A [4th ed]; *see generally* Annotation, *Disposition and rights in respect of surplus income from trust in*

---

1. We note that this proceeding is governed by the law applicable before the enactment of the New York Uniform Principal and Income Act (EPTL art 11-A), which became effective in 2002. We express no view regarding the application of that Act to the facts of this case.
2. Indeed, the Bank accumulated $526,533 over a 25-year period.

*excess of amount directed to be paid to, or required for support of, beneficiaries during trust period,* 157 ALR 668).[3]

Such a result is appropriate in this case where Charles specified that Kathleen receive only income sufficient to satisfy her needs and granted her neither the power to control nor the power to alienate the trust's funds. Under these circumstances, it would be incongruous to hold that Kathleen's estate could dispose of $526,533 upon her death when she had not been allocated such funds during her life and the settlor explicitly directed in the LTT that she not be given any substantial sums of money. We therefore conclude that the Bank should have distributed the disputed amount to objectants, not to Kathleen's estate.

Accordingly, the order of the Appellate Division should be reversed, with costs, the objections sustained and the matter remitted to Surrogate's Court for further proceedings in accordance with this opinion.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, READ and R.S. SMITH concur.

Order reversed, etc.

---

**3.** The Appellate Division majority relied on *Matter of Hopkins* (119 Misc 2d 218 [Sur Ct, Nassau County 1983]) for the proposition that accumulated income in a "needs trust" belongs to the income beneficiary's estate upon his or her death. *Hopkins,* however, involved the interpretation of a trust under legal principles applicable before the Legislature largely eliminated the "rule against accumulations" (*see* L 1959, ch 454; L 1961, ch 866; *see also* EPTL 9-2.1). Under current New York law, a direction to accumulate income is valid if it "is to begin and terminate within the time allowed by the rule against perpetuities" (EPTL 9-2.1 [b]).