Matter of Wellington Trusts. JPMorgan Chase Bank, N.A. (Sarah P.) (2018 NY Slip Op 06749)





Matter of Wellington Trusts. JPMorgan Chase Bank, N.A. (Sarah P.)


2018 NY Slip Op 06749


Decided on October 10, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 10, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
BETSY BARROS
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI, JJ.


2016-00790

[*1]In the Matter of Wellington Trusts. JPMorgan Chase Bank, N.A., respondent; Sarah P. Wellington, appellant.

(File Nos. 329415, 329419)

Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., New York, NY (Alan C. Milstein of counsel), for appellant.
McCarter & English, LLP, New York, NY (Gerard G. Brew of counsel), for respondent.



DECISION & ORDER
In proceedings to judicially settle certain accounts, the objectant Sarah P. Wellington appeals from a revised decree of the Surrogate's Court, Nassau County (Edward W. McCarty III, S.), dated December 4, 2015. The revised decree, insofar as appealed from, upon a decision of the same court dated June 30, 2015, made after a nonjury trial on the issue of liability, denied the objections to the accounts, granted the petitioner's application for legal fees, and judicially settled the accounts.
ORDERED that the revised decree is modified, on the law, by vacating the provision thereof awarding the petitioner "all legal fees paid by the Trusts through the date of the Accountings as set forth on Schedules C and Schedules C-2 of the Accountings" and "all unpaid legal fees through the dates of the Accountings as set forth on Schedules C-1 of the Accountings"; as so modified, the revised decree is affirmed insofar as appealed from, with costs to the petitioner, and the matter is remitted to the Surrogate's Court, Nassau County, for further proceedings consistent herewith.
The appellant objectant, Sarah P. Wellington (hereinafter Sarah), is the beneficiary of two trusts of which the petitioner JPMorgan Chase Bank, N.A. (hereinafter JPMorgan), is the trustee. JPMorgan and a cotrustee commenced the instant proceedings to judicially settle the accounts of these two trusts, as well as proceedings with respect to three related trusts. Sarah filed objections to the accounts, alleging, among other things, that JPMorgan had breached its fiduciary duty to her by failing to appropriately diversify the trust assets. After a nonjury trial on the issue of liability, in a revised decree dated December 4, 2015, the Surrogate's Court, inter alia, denied the objections, granted JPMorgan's application for legal fees to be paid by the trusts through the dates of the accountings, and judicially settled the accounts. Sarah appeals.
The first trust of which Sarah is the beneficiary (hereinafter Sarah Trust 1) derives from an inter vivos trust executed by her grandfather, Herbert G. Wellington, Sr. (hereinafter Wellington), for the benefit of a nonparty (hereinafter the 1961 trust). Wellington was an investment banker, and founded the investment management firm H.G. Wellington & Co. Wellington's son, [*2]Herbert G. Wellington, Jr. (hereinafter Herbert), was also financially sophisticated and worked alongside Wellington at the investment firm, ultimately succeeding his father as its president. The 1961 trust agreement provided that, upon the nonparty's death, the principal of the 1961 trust would be divided into equal shares and placed into separate trusts for the benefit of Wellington's two children, Herbert and Thomas D. Wellington (hereinafter Thomas). The 1961 trust agreement further provided in relevant part that, upon the death of Thomas, the principal of his trust would be divided into separate trusts for the benefit of each of Thomas's prospective issue. The 1961 trust agreement named Herbert and JPMorgan's predecessor as cotrustees of the anticipated trust for Thomas, and of any trust established for the benefit of Thomas's prospective issue. It also granted Herbert the authority to remove the corporate trustee "at any time" and "for any reason or for no reason," and empowered the trustees, "in their sole and absolute discretion," to purchase or acquire securities or real or personal property "as they may deem advisable, whether or not such investments be of the character permissible for investments by fiduciaries and they shall be under no obligation to diversify investments."
Upon the death of the nonparty beneficiary, the 1961 trust principal was divided into two trusts, one each for the benefit of Herbert and Thomas (the trust for Thomas hereinafter referred to as the Thomas Trust 1). Thomas died in July 2000 and was survived by four children, including Sarah. The asset allocation of Thomas Trust 1 was consistent with the Wellington family investment strategy and consisted of 2% cash and 98% equities, comprising mainly United States large-cap stocks, with its most significant holdings in three particular companies. In accordance with the 1961 trust agreement, the principal of Thomas Trust 1 was divided upon his death, establishing separate trusts for each of Thomas's four children, including Sarah. Sarah Trust 1 was fully funded as of May 2001 and mirrored the historic asset allocation of Thomas Trust 1, consisting of 2% cash and 98% equities, and comprising mainly United States large-cap stocks, with significant holdings in the same three companies. JPMorgan and Herbert acted as cotrustees of Sarah Trust 1, as they had done with Thomas Trust 1, in accordance with the 1961 trust agreement.
The second trust of which Sarah is the beneficiary (hereinafter Sarah Trust 2) derives from two testamentary trusts of which her father Thomas was the beneficiary (hereinafter Thomas Trust 2 and Thomas Trust 3). Thomas Trust 2 was created by Wellington's will, which appointed JPMorgan's predecessor and Herbert as cotrustees of the trust. As did the 1961 trust agreement, Wellington's will authorized the trustees to exercise their discretion to purchase or acquire securities as they deemed advisable and it gave Herbert the authority to remove the corporate trustee at any
time and for any reason. Thomas Trust 3 was created by the will of Thomas's mother, which appointed JPMorgan's predecessor and a nonparty as cotrustees. Upon Thomas's death, pursuant to his will and the exercise of his powers of appointment under the two testamentary trusts, the principals of Thomas Trust 2 and Thomas Trust 3 were divided among his four children, and, as relevant here, Sarah Trust 2 was created from the principal allocated to Sarah. JPMorgan was named as a cotrustee with others who subsequently renounced the trusteeship, leaving JPMorgan as the sole trustee.
As cotrustee of Thomas Trusts 1 and 2, and Sarah Trust 1, JPMorgan undertook periodic or annual reviews of the trust assets and respective equity concentrations, and tendered investment strategies to Herbert for his approval. With respect to Sarah Trust 1, based upon its review of the trust's asset allocation and its own preferred target portfolio for asset diversification, JPMorgan recommended that a reduction in large-cap common stock concentrations and an increase in small-cap holdings were necessary to reduce overall portfolio risk. Herbert, however, rejected JPMorgan's preferred investment strategy and repeatedly denied consent to diversify the trust assets from its existing equity positions, which also had been his practice over the lifetime of Thomas Trusts 1 and 2.
JPMorgan and Herbert commenced these proceedings in August 2003 to judicially settle the accounts of Thomas Trusts 1, 2, and 3, and Sarah Trusts 1 and 2. In 2004, Herbert resigned as cotrustee of Sarah Trust 1, and he died in 2005. JPMorgan thereafter filed updated and amended petitions. Sarah filed objections to the accounts, alleging, among other things, that JPMorgan had [*3]breached its fiduciary duty to her by failing to appropriately diversify the trust assets prior to Herbert's resignation as trustee in accordance with its own risk-reduction recommendations. She alleged that this failure resulted in diminishment in the principals of the Thomas Trusts and, consequently, the Sarah Trusts. By revised decree dated December 4, 2015, issued following the liability portion of a bifurcated nonjury trial, the Surrogate's Court, inter alia, dismissed Sarah's objections and ratified the accountings. The court further awarded JPMorgan legal fees incurred through the date of the accountings, in addition to fees yet-incurred pursuant to SCPA 2301(5). Sarah appeals.
We agree with the Surrogate's Court's determination denying Sarah's application to admit at the trial the substance of a 2003 conversation between counsel for JPMorgan and another attorney relating to these proceedings. We agree that the contents of the 2003 conversation are protected by the attorney-client privilege (see CPLR 4503[a][1]; Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 623; Hyatt v State of Cal. Franchise Tax Bd., 105 AD3d 186, 205). Contrary to Sarah's contention, JPMorgan did not "open[ ] the door" to the introduction of the substance of this conversation during its examination of a particular witness (People v Massie, 2 NY3d 179, 184; see People v Richardson, 95 AD3d 1039, 1040). Moreover, any error in failing to admit the contents of the 2003 conversation was harmless, as the result would have been the same if the testimony at issue had been admitted (see CPLR 2002; Rosenberg v Jung Jiang, 153 AD3d 744).
We agree with the Surrogate's Court's determination that Sarah failed to establish that JPMorgan violated the Prudent Investor Act and breached its fiduciary duty to her. The Prudent Investor Act provides that a trustee "has a duty to invest and manage property held in a fiduciary capacity in accordance with the prudent investor standard" (EPTL 11-2.3[a]). The prudent investor standard requires a trustee "to diversify assets unless the trustee reasonably determines that it is in the interests of the beneficiaries not to diversify, taking into account the purposes and terms and provisions of the governing instrument" (EPTL 11-2.3[b][3][C]). In its determination of investment strategy, a trustee must consider "the size of the portfolio, the nature and estimated duration of the fiduciary relationship, the liquidity and distribution requirements of the governing instrument, general economic conditions, the possible effect of inflation or deflation, the expected tax consequences of investment decisions or strategies and of distributions of income and principal, the role that each investment or course of action plays within the overall portfolio, the expected total return of the portfolio (including both income and appreciation of capital), and the needs of beneficiaries (to the extent reasonably known to the trustee) for present and future distributions authorized or required by the governing instrument" (EPTL 11-2.3[b][3][B]).
"The prudent investor rule requires a standard of conduct, not outcome or performance. Compliance with the prudent investor rule is determined in light of facts and circumstances prevailing at the time of the decision or action of a trustee" (EPTL 11-2.3[b][1]; see Matter of Janes, 90 NY2d 41, 50). A court "should not view each act or omission aided or enlightened by hindsight," but "may, nevertheless, examine the fiduciary's conduct over the entire course of the investment in determining whether it has acted prudently" (Matter of Janes, 90 NY2d at 50). "A trustee is not liable to a beneficiary to the extent that the trustee acted in substantial compliance with the prudent investor standard or in reasonable reliance on the express terms and provisions of the governing instrument" (EPTL 11-2.3[b][1]).
Here, the Surrogate Court's determination that JPMorgan's deference to Herbert's investment strategy while he was acting as cotrustee was made with the "reasonable care, skill and caution" required by the Prudent Investor Act (EPTL 11-2.3[b][2]) was warranted by the facts (see generally Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499). Based upon its assessment of the trust assets and attendant risks in light of existing and prospective market conditions, JPMorgan believed that the trusts would be best served by increased diversification. JPMorgan continually recommended to Herbert that the trust assets be diversified by decreasing large-cap stock concentrations and increasing small-cap stock concentrations, and communicated its position on diversification to Herbert, both via telephone and by letter, and [*4]recommended various alternative investment strategies. Herbert, however, did not consent to diversification, and JPMorgan took no action to seek Herbert's removal as cotrustee or otherwise advance its preferred investment strategy. However, Herbert was not a passive or lay trustee. His profession was investment management and he succeeded his father as President of an investment management firm, former H.G. Wellington & Co. Indeed, Herbert's preferred investment strategy had resulted in an approximate 1,750% increase in the market value of Thomas Trust 1, which was the largest of the three Thomas Trusts.
Moreover, the terms of the 1961 trust agreement and Wellington's will evidence Wellington's intent for Herbert to retain ultimate control over the investment strategy of the trusts (see EPTL 11-2.3[b][1]; Matter of Chase Manhattan Bank, 6 NY3d 456). Both named JPMorgan and Herbert as cotrustees, but granted Herbert the authority to remove JPMorgan as a corporate trustee "at any time" and "for any reason." Furthermore, the 1961 trust agreement provided that the trustees were "under no obligation to diversify investments." Upon consideration of all of the circumstances, including JPMorgan's gradual diversification of the trust assets upon Herbert's resignation as cotrustee in 2004, we agree with the Surrogate's Court's conclusion that JPMorgan did not violate the Prudent Investor Act (see EPTL 11-2.3; Matter of Janes, 90 NY2d at 50; Matter of Hyde, 44 AD3d 1195; cf. Matter of Hunter, 100 AD3d 996, 997-998). In addition, Sarah failed to establish that JPMorgan knew or had reason to know that Herbert was not mentally competent to act as cotrustee following a stroke that he suffered in January 2001 (see e.g. Sears v First Pioneer Farm Credit, ACA, 46 AD3d 1282; see also Mental Hygiene Law § 81.02[b]). Consequently, the court's determination that JPMorgan did not breach its fiduciary duty to Sarah was warranted by the facts.
Sarah's contention that the Surrogate's Court was without authority to award JPMorgan legal fees is without merit (see SCPA 2110[1]; Matter of JPMorgan Chase Bank, N.A. [Roby], 158 AD3d 1224, 1225). However, the court should not have approved the legal fees requested by JPMorgan without consideration of the reasonableness of those fees. "In determining a reasonable attorney's fee, the court should consider factors such as time and labor, difficulty of the questions involved, the amount involved, counsel's experience, ability, and reputation, and the customary fee charged for such services" (Matter of Cincotta, 139 AD3d 1058, 1059; see Matter of Freeman, 34 NY2d 1, 9; Matter of Kinzler, 195 AD2d 464). Here, the record does not evidence that the court considered the necessary factors in fixing the award of legal fees or otherwise made a determination as to their reasonableness. We therefore modify the revised decree by vacating the award of attorney's fees, and remit the matter to the Surrogate's Court, Nassau County, for a determination of the reasonableness of the fees sought.
Sarah's remaining contentions are without merit.
LEVENTHAL, J.P., BARROS, BRATHWAITE NELSON and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court