Waddell v Boyea (2025 NY Slip Op 06232)

Waddell v Boyea

2025 NY Slip Op 06232

Decided on November 13, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 13, 2025

CV-24-1259
[*1]William C. Waddell et al., as Successor Trustees, Respondents,
v
John W. Boyea, Individually and as Executor of the Estate of Melinda L. Waddell, Deceased, Appellant.

Calendar Date:September 2, 2025

Before:Garry, P.J., Pritzker, McShan, Powers and Mackey, JJ.

Costello, Cooney & Fearon, PLLC, Syracuse (Robert W. Connolly of counsel), for appellant.
McPhillips, Fitzgerald & Cullum LLP, Glens Falls (Eric C. Schwenker of counsel), for respondents.

Garry, P.J.
Appeal from an order of the Supreme Court (Martin Auffredou, J.), entered June 19, 2024 in Warren County, which granted plaintiffs' motion for summary judgment.
In 2015, Grace H. Waddell (hereinafter the settlor) created an irrevocable trust with the express intention that assets transferred to the trust be held for the benefit of the trust beneficiaries on the terms and conditions set forth in the trust instrument and with the specific objectives of shielding trust assets from Medicaid, easing the transition of property to new owners upon her death and insulating the assets from the claims of any of the beneficiary's creditors. The named beneficiaries of the trust were the settlor's three children; one of those children, Melinda L. Waddell (hereinafter decedent), was named as trustee, and the other two children, plaintiffs William C. Waddell and Kathleen Waddell Johnson, were named as successor cotrustees. The settlor's family farm, spanning 10 parcels of real property in Warren County, was placed into the trust.
The trust instrument directed that, upon the settlor's death, the trustee was to divide the trust assets into equal shares and place those shares into separate subtrusts for each beneficiary. The trustee was then directed to "distribute to [each beneficiary] as much of the income and principal of [their respective subtrust] as [the trustee] determines is necessary or advisable for [the beneficiary's] health, education, maintenance or support." The beneficiaries were granted limited testamentary power to "appoint all or any portion of the principal and undistributed income remaining in [their subtrust] at [their] death among [the settlor's] descendants," defined in the trust instrument as the settlor's lineal descendants of all generations. It was expressly provided that this limited power of appointment could not be exercised by a beneficiary to "appoint to [themselves], [their] estate, [their] creditors or the creditors of [their] estate." The trustee was directed to distribute any unappointed assets in equal shares "to the descendants of [the beneficiary]" upon his or her death, in equal shares to the settlor's descendants if the beneficiary had no living descendants, or, if the settlor had no living descendants, under the laws that would have governed the distribution of the settlor's assets had she died intestate.
Following the settlor's death, decedent was diagnosed with stage four terminal cancer, in December 2021. Thereafter, in February 2022, decedent, as trustee, purportedly agreed to sell a portion of the farm property to defendant, her long-term romantic partner, for its appraised value. After learning that a closing on such sale could not be scheduled for over a month, decedent elected to execute three documents to effectuate the transfer. She first executed a deed, as trustee, conveying her share of the farm property from the trust to herself and defendant as cotrustees of her subtrust. The two of them, as cotrustees of the [*2]subtrust, then executed a second deed conveying the subtrust property to decedent individually. Decedent then executed a third deed transferring that property to herself and defendant as joint tenants with a right of survivorship. The deeds were all executed on the same day in February 2022. Decedent died in March 2022, and the deeds were recorded posthumously.
Plaintiffs, as successor cotrustees of the trust, commenced this action against defendant, individually and as the executor of decedent's estate, to void the second and third deeds as beyond the scope of decedent's authority under the trust instrument. Following joinder of issue and some discovery, plaintiffs moved for summary judgment. Supreme Court granted the motion, and defendant appeals.
We affirm. "To determine whether a trustee's distribution of trust assets was proper, the settlor's intent controls" (Matter of Wallens, 9 NY3d 117, 122 [2007] [citation omitted]). In order to discern that intent, "the trust instrument is to be construed as written and the settlor's intention determined solely from the unambiguous language of the instrument itself" (Matter of Chase Manhattan Bank, 6 NY3d 456, 460 [2006] [internal quotation marks and citation omitted]; see Matter of Hoover, 182 AD3d 685, 688 [3d Dept 2020]; Matter of Joan Moran Trust, 166 AD3d 1176, 1178 [3d Dept 2018]). As noted above, the settlor established the trust with the express intent of benefitting her three children, and she only authorized decedent to distribute trust assets to those beneficiaries following her death where such was "necessary or advisable for [the beneficiaries'] health, education, maintenance or support" (see 26 USC §§ 2041 [b] [1] [A]; 2514 [c] [1]; 26 CFR 20.2041-1 [c] [2]; 25.2514-1 [c] [2]). The trust instrument was particularly clear that interested trustees — a category that included decedent, given that she was a beneficiary as well as the named trustee — "may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal, or the termination of the trust to or for the benefit of a beneficiary, to the extent that the exercise of such discretion is other than for the health, education, maintenance or support of a beneficiary," as defined in the federal Internal Revenue Code (see EPTL 10-10.1). The trust further directed that decedent, as a beneficiary, could only appoint "principal and undistributed income remaining in her [subtrust] at her death among [the settlor's] descendants" and could not pass any assets in her subtrust "to herself, her estate, her creditors or the creditors of her estate." In view of the foregoing, plaintiffs amply met their initial burden of demonstrating that the second and third deeds — which converted the farm property from a subtrust asset to decedent's individual property and ensured that defendant, rather than one of the settlor's descendants, would receive that interest upon decedent's death — ran afoul of the settlor's [*3]intent, as expressed in the trust instrument (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
Defendant attempted to raise an issue of fact in response by suggesting that decedent's health and well-being were furthered by the transfers because she wanted sufficient funds "to provide for her immediate health needs" and was anxious that defendant might be financially harmed by her illness. Although it may have been appropriate to use trust assets to pay for "medical expenses related to [decedent's] final illness," defendant proffered nothing to show what those expenses were or the extent to which invading the subtrust principal was necessary to cover them after considering decedent's other known resources, as also expressly required by the trust (Cross v Cross, 177 Ill App 3d 588, 592, 532 NE2d 486, 489 [Ill App Ct 1988], lv denied 126 Ill 2d 558, 541 NE 1105 [1989]; see Restatement [Third] of Trusts § 50; see also Matter of Roberts [New York City Health & Hosps. Corp.], 61 NY2d 782, 783-784 [1984]). To the extent that defendant's conclusory assertion regarding the need for additional discovery is properly before us, it falls far short of the evidentiary showing that is required to stave off a premature summary determination on that basis (see CPLR 3212 [f]). We also note that the relevant information in this respect would reasonably be in defendant's possession. With regard to the second part of defendant's claim, even assuming that decedent's alleged concerns about defendant's financial condition were sufficiently connected to her own "health, education, maintenance or support" to warrant the use of subtrust assets (but see 26 CFR 20.2041-1 [c] [2]; 25.2514-1 [c] [2]), defendant, by then retired, admitted that any debts incurred by decedent would not have impacted his finances because the two had "remained financially independent . . . and kept [their] assets separate." We therefore agree with Supreme Court that defendant failed to raise a genuine issue of material fact (see Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016]), and plaintiffs' motion for summary judgment was therefore properly granted.
Pritzker, McShan, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.